**Warren Miles BONDURANT, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–96–325–CR.**

Court of Appeals of Texas,
Fort Worth.

Nov. 13, 1997.

Robert Ford, Fort Worth, for Appellant.

Tim Curry, Crim. Dist. Atty., Charles M. Mallin, Asst. Dist. Atty., and Chief of the Appellate Section, Sylvia Mandel, Mike Parrish, Mickey Klein, Assts., Fort Worth, for Appellee.

Before H. BRYAN POFF, Jr. (Sitting by Assignment), DAUPHINOT and BRIGHAM, JJ.

## OPINION

PER CURIAM.

The appellant, Warren Miles Bondurant, was found guilty of the offense of murder. A jury assessed his punishment at fifty years' confinement in the Institutional Division of the Texas Department of Criminal Justice. The appellant perfected his appeal and in two points, he complains of evidentiary rulings made by the court. The appellant contends in point number one that the court erred in overruling his objection to certain hearsay statements. In point number two, the appellant contends the court erred in overruling his objection to the introduction of a tape recording made by the appellant. Finding no error in the court's evidentiary rulings, the points are overruled and the judgment is affirmed.

The appellant was convicted of murdering Carry Coppinger, the lover of Sandra Underhill, the appellant's live-in girlfriend. The appellant had met Sandra after she answered a personal ad that he placed in a local newspaper. While living together, Sandra and

the appellant had a child and Sandra was pregnant at the time of Carry's murder. The love triangle, which precipitated the murder, was somewhat unique in that the appellant was a fifty-six-year-old successful businessman and Carry and Sandra were young women with a history of drug addiction and problems with the law.

The jury found that the appellant shot Carry and placed her body in a fifty-five gallon drum, which he placed on the patio at his home. The appellant admitted to the police and the jury that he shot Carry, but he contended that the shooting was accidental, in spite of the incriminating circumstances tending to show he planned the murder.[1] There was also evidence offered that the appellant had claimed that Sandra killed Carry. Sandra told the police and the jury that she did not kill Carry, but that the appellant told her that he killed Carry and placed her body in the fifty-five gallon drum. Two days later, the odor from Carry's body became unbearable, and on July 15, 1994, the appellant, Sandra, and their child moved to a motel.

At the motel in the early morning of July 16, the appellant told Sandra that he was going to return to their home and commit suicide. He threatened Sandra that if she told of his plans he would say that she killed Carry. Sandra also said that the appellant had threatened to kill her if she told anyone about the murder. After the appellant left the motel, Sandra also attempted to leave. While waiting for a cab, she made statements to Juanita Nicholson, a desk clerk at the motel and John Harvey, a security officer at the motel, concerning the appellant's suicide plans, the murder of Carry, and fear for her own life. The police were called to the motel and Sandra repeated her story for them. The police went to the appellant's home and found Carry's body in the barrel on the patio. The appellant was arrested and charged with Carry's murder.

The statements made by Sandra to Nicholson and Harvey form the basis for the appel-

lant's first point. When the State asked Nicholson to relate what Sandra had told her about somebody killing a woman and putting the body in a barrel, the appellant objected contending such testimony was inadmissible hearsay. Likewise, when the State asked Harvey to disclose what Sandra told him that evening, appellant again objected on the basis that the testimony was inadmissible hearsay. Both objections were overruled and the witnesses were allowed to relate for the jury the statements made by Sandra implicating the appellant in Carry's murder.

Nicholson testified that Sandra told her about somebody killing a woman and putting the body in a barrel. Nicholson concluded the someone was the appellant, who Sandra correctly described not as her husband, but rather as the father of her child. Nicholson said that her conversations with Sandra took place over the phone while Sandra was in her room and in the motel lobby. The conversations were early in the morning hours of July 16, 1994. Nicholson stated that Sandra had originally called for a cab, but she had failed to meet the cab. She had the conversation with Sandra regarding the murder while Sandra was in the motel lobby waiting for a cab. Nicholson also said that Sandra told her that the appellant had threatened to kill her if she told anyone about the murder.

In addition to Nicholson's testimony, the State offered the testimony of Harvey. Harvey testified that Sandra appeared to be afraid and she stated that she was afraid for her life and she was waiting for a taxi to get out of there. Sandra also testified, that the appellant had threatened to blame her for Carry's death. In fact, a tape recording was discovered in which the appellant did claim that Sandra killed Carry.

The State contends that the court did not err in overruling the appellant's objection, for even though the testimony was hearsay it was admissible under the excited utterance exception to the hearsay rule. *See* TEX. R.CRIM. EVID. 803(2). Rule 803 provides:

---

1. Although the appellant had many guns, he bought the gun used in the murder the day before the murder. He also gave a fictitious name when he bought the fifty-five gallon drum.

He also claimed to be in shock when he placed Carry's body in the fifty-five gallon drum. The State argued that each of these acts weighed against an accidental shooting.

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

**(2) Excited Utterance.** A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

*Id.* The State contends the court did not abuse its discretion in determining that Sandra's statements were excited utterances. Decisions by the trial court to admit evidence are subject to an abuse of discretion standard of review. *See Montgomery v. State,* 810 S.W.2d 372, 390 (Tex.Crim.App.1990). In the appellant's case, the State argues it was well within the zone of reasonable disagreement to view Sandra's statements as excited utterances. Generally, a trial court is given broad discretion in deciding whether the proper foundation is laid for the admission of evidence. *See Smith v. State,* 683 S.W.2d 393, 404 (Tex.Crim.App.1984).

■ The excited utterance exception to the hearsay rule is founded on the belief that statements made as a result of a startling or exciting event are involuntary and do not allow the declarant an adequate opportunity to fabricate, thereby ensuring enough trustworthiness to fall outside the hearsay exception. *See Hunt v. State,* 904 S.W.2d 813, 816 (Tex.App.—Fort Worth 1995, pet. ref'd). The hearsay statement contains the sufficient requisite indicia of reliability to be admissible when the statement is shown to be a spontaneous utterance. *See Sellers v. State,* 588 S.W.2d 915, 918 (Tex.Crim.App. [Panel Op.] 1979). In order for the utterance to be admissible under the Rule 803(2) exception, the statement must be the product of a startling event, the declarant was dominated by the emotion, excitement, fear, or pain of the event, and the statement related to the circumstances of the startling event. *See McFarland v. State,* 845 S.W.2d 824, 846 (Tex.Crim.App.1992), *cert. denied,* 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993); *Sellers,* 588 S.W.2d at 918; *Hunt,* 904 S.W.2d at 816.

■ The general rule is that no single rigid principle governs the admissibility of statements under the excited utterance rule. *See Jones v. State,* 772 S.W.2d 551, 554–55 (Tex.App.—Dallas 1989, pet. ref'd) (citing *Fisk v. State,* 432 S.W.2d 912, 914 (Tex.Crim. App.1968)). The focus of the inquiry is whether the cumulative effects of the three requisites combined is sufficient to show the reliability of the statement. *See Sellers,* 588 S.W.2d at 918 (citing *Tezeno v. State,* 484 S.W.2d 374, 378 (Tex.Crim.App.1972)). The critical factor, however, is whether the declarant made the statement while dominated by the emotion arising from a startling event or condition. *See McFarland,* 845 S.W.2d at 846; *Hunt,* 904 S.W.2d at 816 (citing *Mathews v. State,* 835 S.W.2d 248, 250 (Tex.App.— Fort Worth 1992, no pet.)). The startling event which triggers an excited utterance need not necessarily be the crime itself. *See Hunt,* 904 S.W.2d at 816; *see also Sellers,* 588 S.W.2d at 918–19; *Gilbert v. State,* 865 S.W.2d 601, 602 (Tex.App.—El Paso 1993, no pet.).

■ In conducting a *McFarland/Sellers* analysis of the statements in question, we first note there is ample evidence in the record that Sandra was excited, scared, and distraught at the time she told Nicholson and Harvey that the appellant had committed a murder, had threatened to kill her if she told, and had threatened to kill himself. Nicholson said that Sandra "seemed very distraught," she "was afraid, appeared to be afraid," and "[s]he was shaking." Harvey also said that Sandra was visibly trembling. The police officer who interviewed Sandra shortly after she spoke to Nicholson and Harvey, described Sandra as being in an emotional state, "[o]bviously agitated, excited. She had been crying. She was visibly shaking." Sandra also testified that she went to the motel lobby for help in calling her parents because she "couldn't think straight enough to dial the number."

We cannot agree with the appellant's reading of the record wherein he concludes that "the description of [Sandra] undermines any contention that [Sandra's] capacity for reflection was stilled by any condition of excitement." To the contrary, we find the record reflects a person whose demeanor exhibited

the requisite nervous excitement to render her statement spontaneous. It is apparent that Sandra was still under the emotional and physical stress of the murder of her lover, and the subsequent threats against her life, and the appellant's threats to take his own life. Sandra was still dominated by the emotions, excitement, and fear caused by the appellant's actions when she made the statements to Nicholson and Harvey. We thus agree with the State that the second prong of the *McFarland/Sellers* test was satisfied.

The State contends the first prong of the test was also met by the series of events leading up to Sandra's statements to Nicholson and Harvey. The series of events, which caused Sandra's excited condition, began with the killing of her lover, the placing of the lover's body in a barrel on the patio, the flight from their home by Sandra, the appellant, and their child, the appellant's threats to kill her, and his threats to tell others that she killed Carry, culminating in the appellant's flight and his threatened suicide. The State concludes the record reflects a continuous traumatic event, the cumulative effect of which led to Sandra's excited condition in the early morning hours of July 16, 1994. It would not be outside the zone of reasonable disagreement to find that any one of these events in and of itself was a startling event sufficient enough to produce a state of nervous excitement, which would render any utterances made at the time spontaneous and unreflective.

■ We need not resort back to the murder, however, to find a startling event, for the events of the evening of July 15 were sufficient to place Sandra under the emotional strain and in the excited state reflected by the witnesses' testimony. Clearly, a startling event took place that evening. As earlier noted, it is not necessary that the startling event, which triggers the excited utterance, be the crime itself. *See Sellers,* 588 S.W.2d at 918–19; *Tezeno,* 484 S.W.2d at 379; *Hunt,* 904 S.W.2d at 816. We thus find that the appellant's threats to kill Sandra if she told of the murder and his threat to blame her for Carry's murder, coupled with the appellant's threatened suicide, were a startling event sufficient to place Sandra in fear, and excite

and disturb her to the extent that her spontaneous utterances would be reliable and admissible, when recounted by third parties. The first prong of the *McFarland/Sellers* test was thus met, for there was indeed a startling event.

■ Having found the State satisfied the first and second prongs of the test, we next examine the statements and their relationship to the circumstances surrounding the startling event. While the third prong of the test requires the statement to be related to the startling event, it may also relate to the circumstances surrounding the event. The requirement that the statements must relate to the startling event has been liberally interpreted. In *Tezeno,* the court of criminal appeals so relaxed the relationship as to permit a statement which primarily dealt with a prior event and not the startling event to be admitted. In the appellant's case, the statements related not only to the threatened suicide, but also to the murder, the appellant's threats against Sandra, and his threats to blame her for the murder. All of these facts were circumstances surrounding the events of July 16.

■ As noted, the startling event need not be the criminal event. Likewise, the fact that portions of the spontaneous utterance relate to an event prior to the startling event, does not make those portions of the utterance inadmissible. *See Sellers,* 588 S.W.2d at 918–19; *Tezeno,* 484 S.W.2d at 379. In the appellant's case, that portion of the statement dealing with the murder was not inadmissible simply because it dealt with a prior event. That portion of the utterance dealing with the murder was related to the startling event, for the murder and the appellant's subsequent threats against Sandra and his threatened suicide were all closely interwoven. The statements about the murder were a circumstance tending to explain the appellant's startling conduct on July 16. The fact that portions of the statement were made in response to questions, does not preclude that portion of the statement from being spontaneous and reliable. *See Jones,* 772 S.W.2d at 555 (citing *Morris v. State,* 157 Tex.Crim. 14, 246 S.W.2d 184, 186 (1951)). We thus find that the court did not abuse its discretion in

finding Sandra's statements were related to the circumstances surrounding the startling event.

We are convinced that all three prongs of the *McFarland/Sellers* test have been satisfied by the State's evidence. We find, therefore, that the trial court did not abuse its discretion in finding the statements were excited utterances, which were admissible as an exception to the hearsay rule, under Rule 803(2). Point number one is overruled.

In his second point, the appellant also contends the court abused its discretion in admitting into evidence State's exhibit 82. State's exhibit 82 was an audiotaped suicide statement made by the appellant. In the statement, he contended that Sandra had killed Carry. The appellant contends the court erred in admitting the exhibit under TEX.R.CRIM. EVID. 612(a). The appellant argues that the tape was inadmissible because he admitted making the statements contained on the tape.

Rule 612 addresses the admissibility of prior statements of witnesses. The rule also provides for the method for proving up and admitting such statements. The appellant is correct in his contention that the rule requires a witness to be afforded the opportunity to admit or deny making the statement. He is also correct that if the witness unequivocally admits making the statement, the statement may not be admitted as evidence. The appellant concludes that since he admitted making the statements on the tape, the tape itself was not admissible under Rule 612(a). The appellant would be correct and the court would have been in error if the appellant had been a witness rather than a defendant, a party opponent.

While Rule 612(a) offers protections to witnesses from having their statements offered into evidence, the same protections are specifically not extended to defendants, for they stand as party opponents rather than as witnesses. The last sentence in Rule 612(a) recognizes this fact when it states, "This provision does not apply to admissions of a party-opponent as defined in Rule 801(e)(2)." TEX.R.CRIM. EVID. 612(a). A defendant is a party opponent as defined in Rule 801(e)(2). *See Peoples v. State,* 928 S.W.2d 112, 117–18

(Tex.App.—Houston [1st Dist.] 1996, pet. ref'd); *Drone v. State,* 906 S.W.2d 608, 611 (Tex.App.—Austin 1995, pet. ref'd).

The court thus did not err in admitting the tape recording, for it was a prior statement of the appellant, and it could be offered into evidence against him, even though he had already admitted to the matters contained in the tape. The court properly admitted the tape as a hearsay exception under Rule 801(e)(2). Point number two is overruled.

Having overruled all points, the judgment is affirmed.