Guadalupe J. REYES, Appellant,

v.

The STATE of Texas, State.

No. 2–00–283–CR.

Court of Appeals of Texas,
Fort Worth.

June 14, 2001.

Vince Cruz, Jr., Fort Worth, for Appellant.

Bruce Isaacks, Crim. Dist. Atty., Charles E. Orbison, Chance Oliver, and Gene Sera, Asst. Dist. Attys., Denton, for Appellee.

Panel A: CAYCE, C.J.; DAY and DAUPHINOT, JJ.

## OPINION

CAYCE, Chief Justice.

Guadalupe J. Reyes appeals his conviction for the misdemeanor offense of assaulting a family member. *See* TEX. PENAL

CODE ANN. § 22.01 (Vernon Supp.2001). In four points, appellant argues that the trial court erred by admitting hearsay evidence. We will affirm.

## BACKGROUND

Shortly before midnight on July 22, 1997, an Argyle police officer, William Tackett, responded to a 911 "hang-up" call at 406 Country Club Road in Argyle, Texas. As he arrived on the scene, Officer Tackett saw two persons run into a barn. He called for backup and then entered the barn to find appellant holding onto his wife, Rita Reyes. The officer observed swelling and a contusion on Rita's face. Rita was crying and appeared upset. Officer Tackett asked Rita what happened and she responded, "He hit me." Before being questioned, and before he was placed under arrest, appellant told Officer Tackett, "Yes, I hit her."

A deputy with the Denton County Sheriff's Department, Jeff Pruett, spoke with the two children of Rita and appellant. The girl told him that she had seen her father push and hit her mother. The boy said he saw his father hit his mother in the mouth. Deputy Pruett also saw that Rita had swelling on the side of her face, a little bit of blood on her face, and blood around her nose and mouth.

The owner of the property where the assault occurred testified that Rita had told him that she went into the office next to the barn on the evening of July 22. The owner observed that several items were in disarray in the office and he testified that it was possible there had been a fight in the office. He noticed that the thermostat had been pulled off the wall, one of the chairs in front of the desk had been overturned, a plastic or glass container holding about a couple hundred marbles had been thrown onto the floor, and there was blood on the corner of a desk.

Rita was transported to Denton Community Hospital. Rita's medical records showed that Rita sustained a "[m]ild clinical nasal bone fracture." Rita refused to provide police officers with a written statement.

## STANDARD OF REVIEW

■ We review a trial court's decision to admit or exclude hearsay evidence under an abuse of discretion standard. *Coffin v. State*, 885 S.W.2d 140, 149 (Tex. Crim.App.1994). The trial court's ruling will not be reversed as long as it is within the "zone of reasonable disagreement." *Couchman v. State*, 3 S.W.3d 155, 158 (Tex.App.—Fort Worth 1999, pet. ref'd).

## EXCITED UTTERANCES

■ In points one and two, appellant complains that the trial court erred in admitting the statements of the victim and her two children to the police officers under the excited utterance exception to the hearsay rule. The rules of evidence provide an exception to the hearsay rule for excited utterances, described as:

> A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

TEX.R. EVID. 803(2). This exception is founded on the belief that the statements made are involuntary and do not allow the declarant an adequate opportunity to fabricate, ensuring their trustworthiness. *Couchman*, 3 S.W.3d at 159. The declarant's availability to testify as a witness is immaterial when determining whether a statement is admissible under the excited utterance exception to the hearsay rule. TEX.R. EVID. 803.

■ To determine whether a statement qualifies as an excited utterance, (1) the statement must be the product of a star-

tling occurrence, (2) the declarant must have been dominated by the emotion, excitement, fear, or pain of the occurrence, and (3) the statement must be related to the circumstances of the startling occurrence. *Couchman,* 3 S.W.3d at 159. Other factors the court may consider are whether the statement is spontaneous or in response to questions and how much time has elapsed between the startling event and the statement. *See Wood v. State,* 18 S.W.3d 642, 652 (Tex.Crim.App. 2000) (evaluating whether statement was excited utterance after fourteen-hour delay); *Bondurant v. State,* 956 S.W.2d 762, 766 (Tex.App.—Fort Worth 1997, pet. ref'd) (determining that statement was excited utterance even though made in response to questions).

### A. The Victim's Statement

■ Officer Tackett testified that he arrived at the scene within six to seven minutes of the 911 hang-up call and that when he questioned Rita, she said, "He hit me." Officer Tackett testified that she made the statement while her husband was holding on to her; she appeared upset; she was crying; there was swelling and bruises on her face; there were "some abrasions on her arm"; and, she was covered in white dust, which Officer Tackett believed was from the parking lot. Officer Tackett believed Rita was upset because she had been hit in the face by appellant and that the assault had recently occurred due to "the freshness of the cuts and the swelling of [Rita's] nose."

Officer Tackett's testimony shows that Rita's statement, "He hit me," was made while she was dominated by the emotion, fear, pain, and excitement resulting from appellant's assault, and that her statement was related to the startling occurrence of the assault. We, therefore, conclude that the trial court did not abuse its discretion

in admitting Officer Tackett's testimony about Rita's statement under the excited utterance exception to the hearsay rule. Point one is overruled.

### B. The Children's Statements

■ Approximately fifteen minutes after the altercation between appellant and Rita, Deputy Pruett interviewed the Reyeses' two children—a girl between eight and ten years of age and a boy between five and seven years of age. The Reyeses' daughter told Deputy Pruett that the 911 hang-up call had been placed as a result of the assault. According to Deputy Pruett, both children reported that they had seen their father hit their mother and they were "upset ... [b]ecause they had witnessed portions of the altercation between their mother and father."

We conclude that the statements by the Reyeses' children were made near the time of the assault while they were still in the grip of excitement of seeing their mother and father fight, and that the statements were made as a result of seeing their parents fight. Consequently, the trial court did not abuse its discretion in admitting Deputy Pruett's testimony about the statements of the children under the excited utterance exception to the hearsay rule. We overrule point two.

### ORAL ADMISSION

■ In his third point, appellant complains that the trial court erred in admitting his oral admission to the police officer because it did not comply with article 38.22 of the code of criminal procedure. *See* TEX.CODE CRIM. PROC. ANN. art. 38.22 (Vernon 1979 & Supp.2001). The State urges that appellant has waived his right to complain about the admission of the oral admission on appeal. We agree.

■ In order to preserve a complaint for appellate review, a party must make a

timely objection to the trial court, stating the specific grounds for the ruling he desires the trial court to make. TEX.R.APP. P. 33.1(a); *King v. State*, 953 S.W.2d 266, 268 (Tex.Crim.App.1997).

The only objection appellant made at trial was a general one that did not state his grounds.[1] Because appellant's objection does not notify the trial court of the basis for his objection, he has presented nothing for our review. We overrule point three.

## MEDICAL RECORDS

In his fourth point, appellant contends that the trial court erred in admitting the medical records accompanying the affidavit of Ruelene Ward on three hearsay grounds. First, he complains that the affidavit does not satisfy the requirements of rules of evidence 803(6) and 902(10) because it does not demonstrate that Ms. Ward had standing to execute the affidavit on behalf of Denton Community Hospital. *See* TEX.R. EVID. 803(6), 902(10). Second, he argues that he was not provided proper notice under Rule 902(10), which requires the notice to "identify the name and employer, if any, of the person making the affidavit." *Id.* 902(10). Finally, he asserts that the records attached to the affidavit contain hearsay within hearsay in violation of Rule 805. *See id.* 805.

■ The rules of evidence allow the admission of records kept in the course of regularly conducted activities. *Id.* 803(6). To be properly admitted under Rule 803(6), the proponent must prove that the document was made at or near the time of the events recorded, from information transmitted by a person with knowledge of the events, and made or kept in the course of a regularly conducted business activity. *Id.* The predicate for admission of a business record may be established by an affidavit that complies with Rule 902(10). *Id.* The predicate witness does not have to be the record's creator or have personal knowledge of the contents of the record. *Brooks v. State*, 901 S.W.2d 742, 746 (Tex. App.—Fort Worth 1995, pet. ref'd) (op. on PDR). The witness need only have personal knowledge of the manner in which the records were prepared. *Id.* Rule 902(10)(b) provides a sample form of an affidavit that complies with the rule and states that "an affidavit which substantially complies with the provisions of this rule shall suffice." TEX.R. EVID. 902(10)(b).

■ The affidavit of Ms. Ward follows the form affidavit in Rule 902(10)(b) and states in relevant part:

I am the custodian of records of *Rita L. Reyes.* Attached hereto are *8* pages of record from ——————. These said ___ pages of records are kept by *Denton Community Hospital* in the regular course of business, and it was the regular course of business of *Denton Community Hospital* for an employee or representative of *Denton Community Hospital,* with knowledge of the act, event, condition, opinion, or diagnosis, recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto

---

1. The following exchange occurred at trial:
   [STATE:] Did [appellant] make a statement to you prior to you asking him any questions or placing him under arrest?
   *[DEFENDANT:] Your Honor, I object to any statements that this officer intends to relate relating to the Defendant's comments.*

THE COURT: Overruled.
   [OFFICER TACKETT:] After she said, He hit me, he stated, Yes, I hit her. [Emphasis supplied.]

are the original or exact duplicates of the original.

Although Ms. Ward left two blank spaces in the affidavit, the affidavit still substantially complies with Rule 902(10). The affidavit states that Ms. Ward is the custodian of records kept by Denton Community Hospital in the course of the hospital's business, identifies Ms. Ward's employer as Denton Community Hospital, states that Rita's medical records were made by an employee of Denton Community Hospital with knowledge of the events, and states that the employee made the records at or near the time of the event. The affidavit, thus, satisfied both Rule 803(6) and Rule 902(10), including the notice provision of Rule 902(10).

■ Having determined that Rita's medical records were admissible under Rules 803(6) and 902(10), we must next address appellant's argument that the medical records contain inadmissible hearsay. In particular, appellant complains that Rita's medical records contain the following hearsay statements: "Says husband assaulted her [with] fists" and "[patient] reports several blows to face." Appellant urges that these statements are inadmissible because the State failed to present any testimony that the statements were made for the purpose of medical diagnosis or treatment. Appellant only objected to the first statement, "Says husband assaulted her [with] fists." Appellant has, therefore, not preserved any complaint about the second statement, "[patient] reports several blows to face." Tex.R.App. P. 33.1(a); King, 953 S.W.2d at 268. Accordingly, we will only address whether the trial court properly admitted the first statement.

■ When a patient makes a statement for the purpose of medical diagnosis or treatment and describes her medical history, present symptoms, pain, or sensations, or the inception, cause, or external source of the injury or pain, those statements are admissible as exceptions to the hearsay rule. Tex.R. Evid. 803(4); Moyer v. State, 948 S.W.2d 525, 528 (Tex.App.—Fort Worth 1997, pet. ref'd) (admitting victim's statement in medical report under medical diagnosis or treatment exception to hearsay rule, even when statements included description of how victim received injuries). Rita made the statement, "Says husband assaulted her [with] fists," to the treating physician at Denton Community Hospital. The physician recorded Rita's statement in the document entitled "Physician Assessment," and the physician signed that document. We conclude that Rita's statement was made for the purpose of medical diagnosis or treatment and is, therefore, admissible under Rule 803(4). The trial court did not err in admitting Rita's medical records. We overrule point four.

Having overruled each of appellant's points on appeal, we affirm the trial court's judgment.

DAUPHINOT, J., filed a dissenting opinion.

DAUPHINOT, Justice, dissenting.

I respectfully dissent from the majority's holdings that the statements of the complainant and the two children were admissible as excited utterances and that the complainant's medical records were properly admitted.

## EXCITED UTTERANCES

A hearsay statement is admissible as an excited utterance when it relates to a "startling event or condition" and is made "while the declarant was under the stress of excitement caused by the event or con-

dition."[1] As the majority points out, "This exception is founded on the belief that the statements made are *involuntary and do not allow the declarant an adequate opportunity to fabricate, ensuring their trustworthiness.*"[2] [Emphasis added.] The statement must be the *product* of a startling occurrence, made while the declarant is dominated by the emotion, excitement, fear, or pain of the occurrence, and must relate to the circumstances of the startling occurrence.[3]

In the case now before us, Officer Tackett responded to a 911 hang-up call. When he arrived at the scene, Tackett saw Appellant and the complainant run into a barn. Inside the barn, Tackett observed that the complainant was very intoxicated and unsteady on her feet. Appellant was holding onto the complainant, but it is unclear whether the two were supporting each other or whether Appellant was restraining the complainant.

Tackett questioned the complainant, who did not testify at trial, at the scene. Initially, Tackett claimed that he asked the complainant what happened, and she responded, "He hit me." Tackett did not testify that the complainant gestured toward Appellant or indicated in any way that the "he" she was referring to was Appellant. On cross-examination, Tackett admitted that instead of simply asking the complainant what had happened, he actually asked, "Did he hit you?"

Not only was the complainant's statement not a spontaneous exclamation, but Tackett made an assumption as to the cause of the bruising on the complainant's face and supplied the answer to his own question. Furthermore, Tackett described the complainant as merely being "upset" at the time she made the statement, which is far from being "in the grip of violent emotion" such that the "capacity for reflection necessary to the fabrication of a falsehood is lost," as required for a statement to qualify as an excited utterance.[4] Tackett also testified that the complainant was "crying," and agreed with the prosecutor's statement that "whenever you say she was upset and crying, would you consider that excited?"

In his testimony, Tackett also claimed that the complainant had refused to provide him with a "standard family violence statement." The statement was a pre-printed form consisting of questions such as, "[W]ho assaulted you?" and "Has this person assaulted you before?" The complainant answered the first question by writing down her own name. The second question she answered by writing, "no." The complainant also signed her name at the bottom of the form. Thus, although the complainant apparently refused to provide the answers Tackett wanted, she did not refuse to give a statement, contrary to Tackett's initial testimony. The trial court sustained the State's hearsay objection to the admission of the written form.

At another point in his testimony, Tackett claimed that, after the complainant stated, "He hit me," Appellant volunteered the statement, "Yes, I hit her." Tackett acknowledged that he did not include the fact that Appellant made such a statement in the narrative report he prepared on the night of the incident. Furthermore, Tackett admitted that he prepared the report at that time because "[he] would not be

---

1. Tex.R. Evid. 803(2).

2. *See Couchman v. State,* 3 S.W.3d 155, 159 (Tex.App.—Fort Worth 1999, pet. ref'd).

3. *Id.*

4. *King v. State,* 631 S.W.2d 486, 491–92 (Tex. Crim.App.), *cert. denied,* 459 U.S. 928, 103 S.Ct. 238, 74 L.Ed.2d 188 (1982).

able to recall any of the facts if [he] had to wait three years." Nevertheless, at trial, Tackett claimed that Appellant had voluntarily stated, "I hit her," three years earlier.

Although Tackett acknowledged that he had no idea of when the alleged assault on the complainant actually occurred, he did speculate outside the presence of the jury that it was close in time to the 911 call "based on the freshness of the cuts and the swelling on her face." In response to the question, "[D]o you have any idea why she was upset?" Tackett testified, "I'd say because she got hit in the face. . . . I would assume because she'd been hit in the face. It would have upset me."

Officer Pruett's observations were different from Tackett's, although he relied on Tackett's representations to him in his testimony. Pruett testified that he did not make his own report of the incident three years earlier and that he refreshed his memory by reading Tackett's report on the day of trial. Pruett testified that when he arrived on the scene, Tackett told him to talk to two children "to determine their condition and if they had been involved in this altercation." Pruett described the demeanor of the children as "upset" and "concerned . . . about what had occurred, concerned if their parents were okay." Pruett concluded that the children were upset "[b]ecause they had observed portions of the altercation between the mother and the father." Pruett summarized his conversation with the children as follows:

> Basically, I asked them what they had seen. And the daughter, the youngest girl, advised that she had seen mom and dad yelling and screaming at each other, and she stated that it appeared that dad had pushed and struck or hit mom, in her terms. The smaller child of the two,

the boy, stated that dad had hit mom in the mouth, and that was about the extent of his description [of] the incident.

Pruett testified that the children told him that the altercation resulted in the 911 call, and thus he concluded that the fight was occurring during the 911 call, approximately fifteen minutes prior to his conversation with the children. According to Pruett, Tackett told him that the complainant was the mother of the children. Pruett acknowledged that he was never able to determine whether Appellant was the children's father. The children did not have the same last name as Appellant, and there was no evidence from any source at. trial that Appellant was their father.

Officer Pruett agreed that the complainant's injuries were consistent with injuries that might be found on a person who was intoxicated and who lost her balance, striking her face or head against some object. Richard Tucker, an attorney, and the owner of the horse ranch where Appellant worked and which was the scene of his arrest, testified to the condition of an office located next to the barn on the night of the incident. According to Tucker, the thermostat had been pulled off the wall, a chair had been overturned, a container of marbles had been thrown on the floor, and there was blood on the corner of the desk.

There was no evidence presented at trial that the State had made any attempt to secure the complainant's presence in court. Appellant does not raise denial of the right of confrontation except tangentially, although he does point out that this right is indeed implicated in examining the integrity of hearsay statements. While rule 803 is entitled "Hearsay Exceptions; Availability of Declarant Immaterial," I cannot agree with the majority's interpretation of that rule.[5] The rule states, "The following

5. TEX.R. EVID. 803.

are not excluded by the hearsay rule, *even though the declarant is available as a witness.*[6] As I understand it, the rule simply means that an excited utterance may be admissible under an exception to the hearsay rule even if the declarant is present and testifying.

An "excited utterance" is not any statement made when a person is "excited" or "upset." I am upset, for example, when I am pulled over for a traffic ticket. I am upset when I lose my car keys. I am excited when I plan my vacation. The word "excited" is not a talisman that automatically makes any statement that follows it admissible. What we now call an "excited utterance" has, in the past, been called a "spontaneous declaration," a "spontaneous exclamation," and a "res gestae statement." While the nomenclature has changed, the meaning has not.

The rationale for the admission of this type of statement has been explained by recognized scholars:

> Various exceptions to the hearsay rule have arisen because of independent reliability that the statement made was the truth of the matter stated. Under one of these exceptions, spontaneous utterances which flow from a traumatic or startling event are admissible to prove the truth of the utterance. The rationale behind this exception is that one is normally incapable of guile or cool reflection while still under the emotional impact of the event, and any statements

made while in such a condition are likely to be truthful.[7]

Additionally, it was long the rule that

> [t]o be admissible as res gestae a statement must be shown to have been a spontaneous reaction to an exciting event, and there must be independent proof of the occurrence to which the statements relate; the statements themselves cannot be used to prove the exciting event.[8]

While the statement must still be a spontaneous reaction to a traumatic or startling event that renders the declarant incapable of guile or cool reflection in order to qualify as an excited utterance, it is unclear whether there must be independent proof of the occurrence to which the statement relates. The Advisory Committee's notes to rule 803(2) state:

> Whether *proof of the startling event* may be made by the statement itself is largely an academic question, since in most cases there is present at least circumstantial evidence that something of a startling nature must have occurred.... Nevertheless, on occasion the only evidence may be the content of the statement itself, and rulings that it may be sufficient are described as "increasing" ... and as the "prevailing practice ."[9]

The rules of evidence are, of course, the same for civil and criminal trials. An area of criminal law, however, that has addressed the issue of what degree of emotion is sufficient to render a person incapable of cool reflection is sudden passion mitigation, formerly voluntary manslaugh-

---

**6.** *Id.* (emphasis added).

**7.** *Jones v. Hopper,* 506 S.W.2d 768, 770 (Tex. Civ.App.—Houston [14th Dist.] 1974, no writ) (citing 1 C. McCormick & R. Ray, Texas Evidence § 913 (2d ed.1956)).

**8.** *Richardson v. Green,* 677 S.W.2d 497, 500 (Tex.1984) (citing *Hartford Accident & Indem.*

*Co. v. Hale,* 400 S.W.2d 310, 311 (Tex.1966); *Truck Ins. Exch. v. Michling,* 364 S.W.2d 172, 174–75 (Tex.1963)); *see also Templeton v. Dreiss,* 961 S.W.2d 645, 668 (Tex.App.—San Antonio 1998, pet. denied).

**9.** Tex.R. Evid. 803(2) advisory committee's note (citations omitted).

ter.[10] For purposes of determining whether "sudden passion" exists as a mitigating circumstance at the punishment phase of a murder trial, the mere claim of fear is insufficient.[11] Rather, fear that demonstrates sudden passion must be that which commonly produces a degree of terror sufficient to render the mind incapable of cool reflection.[12] Additionally, not all evidence of anger entitles a defendant to an instruction on voluntary manslaughter or a sudden passion instruction at punishment.[13] Evidence that a defendant was enraged or terrified before acting is insufficient to raise the issue of sudden passion unless the evidence also shows that these emotions resulted from provocation at the time of the offense.[14]

Similarly, in order for a statement to qualify as an excited utterance, the declarant must be more than upset, more than excited. The declarant must be in the grip of overwhelming emotion arising from the event or condition to which the statement relates. Furthermore,

> [a] statement that is simply a narrative of past acts or events, as distinguished from a spontaneous utterance, does not qualify as an excited utterance regardless of how soon after the event it is made. The circumstances must show that it was the event speaking through the person and not the person speaking about the event.[15]

We have none of these basic requirements in the case now before us. The statements at issue here were not sponta-

neous. The evidence presented of the emotion displayed by the complainant and the children is insufficient. There was no evidence as to when any exciting event, other than the arrival of the police, occurred. The police officers only speculated that the complainant's emotion was caused by her injury. They only speculated that she was hit in the face, as opposed to falling or being pushed onto the desk. They speculated that her injuries occurred not long before the 911 call, and they speculated that the children were upset after witnessing the above scenario. At best, the evidence shows that the assault could have occurred. Our supreme court, however, instructs us that "[e]vidence which establishes only that the event *could have* occurred does not satisfy the requirement; it must be sufficient to support a finding that it *did* occur." [16]

I do not agree, therefore, with the majority that the complainant's statements and those of the two children satisfied the requirements for admission as excited utterances.

## MEDICAL RECORDS

Additionally, I cannot agree with the majority that the medical records were properly admitted. Contrary to the majority's assertions, nowhere in the affidavit does Ms. Ward state that she is the custodian of Denton Community Hospital records. Nor does she identify her employer as Denton Community Hospital. Instead, Ms. Ward states only that she is the custo-

---

**10.** Tex. Penal Code Ann. § 19.02(d) (Vernon 1994).

**11.** *Williams v. State*, 35 S.W.3d 783, 787 (Tex. App.—Beaumont 2001, no pet.).

**12.** *Id.*

**13.** *Nance v. State*, 807 S.W.2d 855, 860 (Tex. App.—Corpus Christi 1991, pet. ref'd); *Owens*

*v. State*, 786 S.W.2d 805, 808 (Tex.App.—Fort Worth 1990, pet. ref'd).

**14.** *Nance*, 807 S.W.2d at 861.

**15.** *First Southwest Lloyds Ins. Co. v. MacDowell*, 769 S.W.2d 954, 959 (Tex.App.—Texarkana 1989, writ denied) (citations omitted).

**16.** *Richardson*, 677 S.W.2d at 501.

dian of "Rita L. Reyes['s]" records. She does not say she is the custodian of medical records only, and she does not identify her employer. It is impossible, therefore, to tell from the affidavit whether Ms. Ward is an employee of the district attorney's office in charge of Rita L. Reyes's case file, an employee of a victim's advocacy group that keeps a file on Rita L. Reyes, a friend of Rita L. Reyes charged by her with keeping up with her important documents, or a custodian of records for the Argyle Police Department.

Furthermore, I disagree with the majority that the statements contained within the documents are admissible under an exception to the hearsay rule. Although the documents purport to be medical records, it is not clear that the hearsay statements they contain were made for the purpose of medical diagnosis or treatment. The documents contain no medical or social history. The first notations on the form entitled "Physician Assessment" read, "Says husband assaulted her [with] fists. He had + ETOH [and] she does too. Denies previous domestic abuse[.] PMH unremarkable[.] She does not wish to press charges or talk to police [at] this time." The document also suggests that the patient did not want medical treatment and instead, wanted to go home. The emergency department discharge instructions read, "Friends of Family referral ... Call police if you change your mind 382–7273 or 800–572–4031."

> This court has held that
>
> [s]tatements contained in a medical record as to how an accident happened or where it happened, age, medical history, etc. are not admissible as a business-

record exception to the hearsay rule, because the party making the entry in the record does not have personal knowledge as to these matters, and the statements do not become trustworthy just because it is hospital routine to record them. Such statements may be admissible if the record reflects that they fall within some other exception to the hearsay rule.[17]

As the Texas Supreme Court pointed out in *Skillern,*

> [A] doctor's statement as to whether a patient had ... lacerations of the face, as to his [p]ulse rate or blood pressure, and as to things that happen within the hospital are within the doctor's or nurse's personal knowledge. However, statements as to how an accident happened or where it happened, age, medical history, etc., do not become particularly trustworthy just because it is hospital routine to record them and they should be excluded. The legislature has provided for their exclusion by the requirement of personal knowledge by an employee or representative of the "business" (e.g., hospital). The latter examples are not within the personal knowledge of the hospital personnel. They have no personal knowledge of how or where the patient was injured.[18]

Texas courts have recognized a limited exception to the hearsay rule for statements made by a patient to a physician for the purposes of medical diagnosis and treatment. This exception is, however, limited to those statements that are "reasonably pertinent" to diagnosis or treatment.[19] The exception does not permit

---

17. *Cornelison v. Aggregate Haulers, Inc.,* 777 S.W.2d 542, 545 (Tex.App.—Fort Worth 1989, writ denied) (citing *Skillern & Sons, Inc. v. Rosen,* 359 S.W.2d 298, 305 (Tex.1962)).

18. *Skillern,* 359 S.W.2d at 305.

19. Tex.R. Evid. 803(4).

these statements to be introduced into evidence as proof of the truth thereof.[20] Underlying rule 803(4) is the theory that a patient will provide accurate medical information to the physician in order to gain effective treatment.[21] When, however, the patient is not seeking medical treatment, this guarantee of reliability is brought into question and the medical records should not be admitted into evidence.[22]

For all of the foregoing reasons, I would hold that the trial court erred in admitting the medical records and the complainant's purported statements contained within these records.

Accordingly, I would sustain Appellant's complaints regarding the aforementioned hearsay evidence and would proceed to conduct the appropriate harm analysis to determine whether the trial court's error in admitting such evidence calls for a reversal of the judgment.

---

**20.**  *Chance v. Chance,* 911 S.W.2d 40, 80 (Tex. App.—Beaumont 1995, writ denied) (Brookshire, J., dissenting).

**21.**  *Sneed v. State,* 955 S.W.2d 451, 455 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd).

