# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00284-CV

### In the Matter of B. P. S.

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
NO. J-27,754, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

The district court, sitting as a juvenile court, adjudicated B.P.S. delinquent after finding that he committed the offense of aggravated robbery. *See* Tex. Penal Code Ann. § 29.03 (West 2003). The juvenile court assessed punishment at three years' probation. In a single issue on appeal, B.P.S. challenges the factual sufficiency of the evidence supporting the juvenile court's finding that a deadly weapon was used during the commission of the offense. Within that issue, B.P.S. also challenges the admissibility of certain evidence. We will affirm the judgment.

## BACKGROUND

The juvenile court heard evidence that, on the evening of November 17, 2006, the victim, Gorge Alcides Ramos Rivera, was approached on the street by a group of four boys, one of whom Rivera identified in court as B.P.S. Rivera testified that B.P.S. asked him if he had a cigarette. Rivera told him that he did not. According to Rivera, B.P.S. then asked him for a dollar. Rivera gave B.P.S. a dollar, but B.P.S. told him, "No, it's five." Rivera recounted that, at this point, one

of the other boys hit him in the head.[1]  When the State asked Rivera what he got hit with, Rivera answered, "The truth is I don't know.  It was so—so fast that I didn't see."  The State then asked if what he was hit with was hard or soft.  Rivera testified, "Very hard."  The State also asked, "When you got hit, did it hurt?"  Rivera responded, "Of course."  Rivera identified for the court a scar over his left eye where he was allegedly hit.  Rivera explained that, after he was hit, he fell to the ground "from the impact."  He then recalled the boys "starting [] to press on [his] pockets."  Rivera testified that "they took everything.  They took my telephone, my wallet, and everything."  After the boys left, Rivera got up and made his way back to his apartment.  He testified that he "had a lot of blood," and he placed a jacket around his head to cover the wound.  When he returned to his apartment, Rivera and his friends decided to go back out and try to locate the boys.  Rivera and his friends found them at a bus stop.  Rivera testified that, when they arrived, police officers were already talking to the boys.  Rivera approached one of the officers and, through a friend who translated for him,[2] told the officer what happened.  The officers searched B.P.S. and found Rivera's cell phone in B.P.S.'s pocket.  Rivera testified that the police then called an ambulance, and Rivera was transported to the emergency room.  At the hospital, doctors examined Rivera's wounds.  Rivera testified that they put a patch on his eye and also "did some stitches" because his wound "was very big."

---

[1]  It is undisputed that Rivera was hit by one of the other boys, not B.P.S.  The State relied on the law of parties to hold B.P.S. responsible for the other boy's actions.  *See* Tex. Penal Code Ann. § 7.02 (West 2003).

[2]  Rivera did not speak English.  Both his statement to the police and his trial testimony were translated from Spanish to English.

In addition to Rivera's testimony about the nature and severity of his injuries, also admitted into evidence were police photographs taken of Rivera's face on the night of the incident, and medical records from the hospital where Rivera was treated. The photographs show what appears to be blood around Rivera's left eye and on his forehead, while the medical records provide details about Rivera's injuries. Specifically, in a record titled, "Emergency Room Report," the treating physician reported the following:

> Patient is a 19-year-old Latin-American male who was in a fight this afternoon and was struck with a rock on his face. There was no loss of consciousness. He has no neck or back pain. He says he does have some mild pain in his thighs and a little ache in his left flank. . . .
>
> . . . .
>
> He has a 1 cm jagged laceration just above his left eyebrow. There are two small rock foreign bodies in the wound which were easily removed. There was no visible or palpable skull fracture, no evidence of entrapment. He has a small abrasion on his left malar region of his face. Otherwise his face is nontender and traumatic. . . .
>
> . . . .
>
> After obtaining adequate anesthesia the area was prepped and draped in a sterile manner. . . . The two rocks were removed. The wound was reexplored. No other injury or foreign body was noted. It was then closed with . . . sutures and Neosporin applied.
>
> DIAGNOSES
> 1. Facial laceration, sutured.
> 2. Closed-head trauma.
>
> PLAN
> I have given him head injury as well as wound precautions, and requested he return if he has more pain, fever, vomiting, vision changes, weakness, numbness, rash, or feels worse. I have requested he return in 48 hours for a wound check. I placed him on Keflex and Vicodin. He did receive Duricef here.

The juvenile court also heard evidence from City of Austin police officer Carlos Vallejo, who responded to the crime. Vallejo testified that he had been a police officer for approximately five-and-a-half years. Of relevance to this appeal, the State asked Vallejo the following question: "Is an object with the density or hardness of a rock, or something solid like that, a rock, a piece of wood, a hard piece of plastic, is that able to inflict serious bodily injury; do you know?" Counsel for B.P.S. objected to this question on numerous grounds, including that it called for speculation, was not relevant, was more prejudicial than probative, and that the officer had not been designated or qualified as an expert. The juvenile court overruled the objections. The State then rephrased the question: "Do you believe that taking an object like that, with that density, and hitting somebody, is capable of causing serious bodily injury, if not death?" Counsel for B.P.S. objected to the State's rephrasing and re-urged his earlier objections. The juvenile court responded:

> The objection is overruled. However, the Court will accept this as just the general knowledge of whether or not a rock, or something like that, striking someone's head, by the basic common knowledge of all of us could cause death or serious bodily injury. Please answer the question.

Vallejo answered, "Yes."

The juvenile court also heard testimony from B.P.S., who denied the allegations against him. B.P.S. testified that he saw his friend "punch" Rivera. B.P.S. was then asked, "What does he punch him with?" B.P.S. answered, "His fist, for all I seen."

The juvenile court found that B.P.S. committed the offense of aggravated robbery and adjudicated him delinquent. Following the disposition hearing, the juvenile court placed B.P.S. on probation, to begin at the Travis County Leadership Academy, for three years. This appeal followed.

4

**ANALYSIS**

**Evidence admissibility**

Although B.P.S. designates only a single issue on appeal—whether the evidence is factually sufficient to support the juvenile court's deadly weapon finding—he devotes most of his briefing to the separate issue of whether certain evidence should have been admitted. Although not specifically assigned as error, since we are to construe briefs liberally and address "every issue raised and necessary to final disposition of the appeal," we will separately address B.P.S.'s admissibility arguments. *See* Tex. R. App. P. 38.9, 47.1.

We review a trial court's decision to admit evidence under an abuse of discretion standard. *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007). The trial court abuses its discretion only when the decision lies "outside the zone of reasonable disagreement." *Id*.

B.P.S. contends that the juvenile court should not have admitted (1) Officer Vallejo's testimony about whether a rock or similar object was capable of causing serious bodily injury or death and (2) the medical records. We will address each contention in turn.

*Officer Vallejo's testimony*

B.P.S. asserts that Officer Vallejo's testimony should not have been admitted for the following reasons: (1) it violated rule 701, relating to opinion testimony by a lay witness, *see* Tex. R. Evid. 701; (2) it violated rules 702 and 703, relating to expert testimony, *see id*. 702, 703; (3) it violated rules 401 and 403, in that it was either not relevant or more prejudicial than probative, *see id*. 401, 403; and (4) Vallejo's name was not included on the State's witness list.

We find these contentions to be without merit. First, rules 702 and 703 are not implicated in this case, as the juvenile court did not allow Officer Vallejo to testify as an expert: "[T]he Court will accept this as just the general knowledge of whether or not a rock, or something like that, striking someone's head, by the basic common knowledge of all of us could cause death or serious bodily injury."

Second, there was no abuse of discretion in the juvenile court's finding that Vallejo's testimony was admissible under rules 401 and 403. Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex. R. Evid. 401. The juvenile court did not abuse its discretion in finding that Vallejo's testimony about whether a rock or similar object was capable of causing serious bodily injury or death made a deadly weapon finding more or less probable. As for rule 403, it provides that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403. Because this was a one-day trial before the juvenile court (and not a jury), the juvenile court did not abuse its discretion in finding that such concerns were not present here.

Third, there was no abuse of discretion in the juvenile court's finding that Vallejo's testimony was proper opinion testimony by a lay witness under rule 701. Rule 701 provides that lay witness testimony "is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the

determination of a fact in issue." Tex. R. Evid. 701. This Court has explained what is required under section (a) of this rule:

> The rule's requirement that the opinion or inference of a lay witness be "rationally based on the perception of the witness" can be said to have two elements. The first element involves the personal knowledge of the witness as required by Rule 602. The necessary personal knowledge may be gained by the perception of fact by the senses of the witness. Thus, the perception underlying a lay witness's testimony may be what was seen, heard, smelled, tasted, touched, or felt. The second element mandates that the opinion must be one that a reasonable person could draw from the underlying facts. Under Rule 701, much must be left to the discretion of the trial court.

*Harnett v. State*, 38 S.W.3d 650, 657-58 (Tex. App.—Austin 2000, pet. ref'd) (internal citations omitted).

Although it is true that Officer Vallejo did not have any personal knowledge of the specific object that was used in the commission of the crime, he testified that he had been a police officer for approximately five-and-a-half years. Also, the record reflects that Vallejo saw Rivera's wounds before they were treated and heard Rivera describe, through a translator, how Rivera was attacked. From these underlying facts, Vallejo could draw the conclusion that, whatever Rivera was hit with, the object was capable of causing serious bodily injury or death in the manner of its use. Thus, the juvenile court's admission of Vallejo's lay-witness testimony was not "outside the zone of reasonable disagreement." *See Garcia v. State*, 201 S.W.3d 695, 704-05 (Tex. Crim. App. 2006); *see also Hollis v. State*, 219 S.W.3d 446, 467 (Tex. App.—Austin 2007, no pet.) ("Under Rule 701, an officer may testify about opinions based on his personal training and first-hand experiences without being qualified as an expert under Rule 702.").

7

Finally, as for B.P.S.'s contention that Vallejo's name was not included on the State's witness list, during trial, counsel for B.P.S. withdrew this objection immediately after it was made and before the juvenile court had an opportunity to consider it:

| | |
|---|---|
| [Counsel for B.P.S.]: | Your Honor, I'm . . . going to object to this witness. I don't know . . . who this witness is. The State has not provided me with a witness list; despite the fact that I . . . filed my discovery order and also my 404(b) letter quite a while ago. And from the offense report that I saw, I don't . . . wait. This is the APD officer. |
| [Prosecutor]: | Yes, sir, it is. |
| [Counsel for B.P.S.]: | Okay. That's fine. |

Therefore, any error relating to the State's alleged failure to include Vallejo on its witness list has not been preserved for review.

We conclude that there was no abuse of discretion in the juvenile court's admission of Officer Vallejo's testimony. However, even were we to assume that the juvenile court should not have admitted his testimony, any error would be harmless. *See* Tex. R. App. P. 44.2(b). As we will explain below, there was other evidence in the record supporting the juvenile court's deadly weapon finding apart from Vallejo's testimony. *See Leday v. State*, 983 S.W.2d 713, 717 (Tex. Crim. App. 1998) ("It is well established that the improper admission of evidence does not constitute reversible error if the same facts are shown by other evidence which is not challenged.").

*Medical records*

In his brief, B.P.S. asserts that the medical records detailing the nature of Rivera's injuries should not have been admitted because: (1) the patient named in the records was a person named "Jorge Alcedes," not Gorge Rivera; (2) B.P.S. had "no opportunity to confront and cross-examine the doctor" who treated Rivera; and (3) one particular statement in the records is "hearsay within hearsay." However, during trial, B.P.S. only objected to the admission of a particular statement in the medical records on the basis of "hearsay within hearsay":

> The only objection that I have is going to be in this paragraph where it says, "The patient is a 19-year-old Latin male, who was in a fight this afternoon and was struck in the rock with a—in the face with a rock." I believe that's hearsay within hearsay, and would ask that that portion be struck.

Therefore, B.P.S. has not preserved error on the issues of (1) the variance between the name of the victim in the indictment and the name in the medical records, *see Martin v. State*, 541 S.W.2d 605, 608 (Tex. Crim. App. 1976) ("Questions involving the rule of *idem sonans*[³] must be raised in the first instance at trial. If the issue is raised for the first time on appeal, it will be treated as having been waived and will present nothing for review."), and (2) B.P.S.'s inability to confront and cross-examine the treating physician. *See Reyna v. State*, 168 S.W.3d 173, 179

---

³ *Idem sonans* means "of the same sound." *Martin v. State*, 541 S.W.2d 605, 606 (Tex. Crim. App. 1976). The rule of *idem sonans* provides that if two names sound alike but are spelled differently, any variance in spelling is immaterial, "provided the misspelling does not transform the name into a wholly distinct appellation." *Id*. We note that the different names in this case appears to be a question involving the rule of *idem sonans*. The victim testified during trial that his full name was "Gorge Alcides Ramos Rivera." The name of the patient in the medical records was "Jorge Alcedes."

(Tex. Crim. App. 2005) ("An objection on hearsay does not preserve error on Confrontation Clause grounds."). Thus, we shall consider only the "hearsay within hearsay" issue.

After counsel for B.P.S. objected on this ground, the juvenile court initially sustained the objection, deleting the statement about the patient being "struck with a rock" but admitting the remainder of the medical records.[4] However, the juvenile court later overruled B.P.S.'s objection after the juvenile court determined that the documents were medical records that satisfied the business records exception to the hearsay rule. *See* Tex. R. Evid. 803(4), 803(6).

Rule 805 provides, "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." Tex. R. Evid. 805. Thus, in order for the "struck with a rock" statement to be admissible, both the medical records and the specific statement within the medical records needed to conform to an exception to the hearsay rule. On this record, we cannot conclude that the juvenile court abused its discretion in admitting the statement.

First, the medical records in this case satisfied the business records exception to the hearsay rule. To be properly admitted under Rule 803(6), the proponent must prove that the document was made at or near the time of the events recorded, from information transmitted by a person with knowledge of the events, and made or kept in the course of a regularly conducted business activity. Tex. R. Evid. 803(6). The predicate for admission of a business record may be established by an affidavit that complies with Rule 902(10). *Id.* The predicate witness does not have

---

[4] Before admitting the medical records, the juvenile court asked counsel for B.P.S. if there was any other objection. Counsel replied, "No, Your Honor."

10

to be the record's creator or have personal knowledge of the contents of the record. *Reyes v. State*, 48 S.W.3d 917, 921 (Tex. App.—Fort Worth 2001, no pet.). The witness need only have personal knowledge of the manner in which the records were prepared. *Id*. Rule 902(10)(b) provides a sample form of an affidavit that complies with the rule and states that "an affidavit which substantially complies with the provisions of this rule shall suffice." Tex. R. Evid. 902(10)(b). In this case, the medical records included an affidavit by Shari Mitchell, the custodian of records for South Austin Hospital, who averred that she had personal knowledge of the manner in which the records were prepared. The affidavit follows the sample form provided in rule 902(10)(b) and thus substantially complies with the rule. We find no abuse of discretion in the juvenile court's decision to admit the medical records pursuant to the business records exception to the hearsay rule.

Second, the statement within the medical records satisfied the medical diagnosis or treatment exception to the hearsay rule. To be properly admitted under rule 803(4), the proponent must prove that the statement was made for the purpose of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment. Tex. R. Evid. 803(4). The statement at issue, "Patient is a 19-year-old Latin-American male who was in a fight this afternoon and was struck with a rock on his face," was in a section of the "Emergency Room Report" titled, "History of Present Illness / Review of Symptoms." The document was signed by the treating physician. Thus, we find no abuse of discretion in the juvenile court's finding that the statement was made for the purpose of medical diagnosis or treatment.

11

We conclude that the juvenile court did not abuse its discretion in admitting the statement within the medical records. However, even assuming there was error, it would be harmless. *See* Tex. R. App. P. 44.2(b). There were other statements in the medical records from which the juvenile court could infer that Rivera had been struck with a rock. Specifically, in the "Physical Examination" section, the physician wrote, "There are two small rock foreign bodies in the wound which were easily removed." Then, in a section labeled "Procedure Note," the physician wrote, "The two rocks were removed." B.P.S. did not object to either of these statements.

We overrule B.P.S.'s arguments involving the admissibility of the evidence.

**Factual sufficiency**

We now turn to B.P.S.'s contention that the evidence was factually insufficient to support the juvenile court's deadly weapon finding. In his brief, B.P.S. concedes that there was sufficient evidence supporting his adjudication for the offense of robbery. He asserts, however, that he should not have been adjudicated for the offense of aggravated robbery "because the State's evidence was factually insufficient to prove beyond a reasonable doubt the use of a deadly weapon, namely some unknown blunt object."

Adjudications of delinquency in juvenile cases are based on the criminal standard of proof. *See* Tex. Fam. Code Ann. § 54.03(f) (West Supp. 2007). Therefore, we review adjudications of delinquency in juvenile cases by applying the same standards applicable to sufficiency of the evidence challenges in criminal cases. *In re M.C.L.*, 110 S.W.3d 591, 594 (Tex. App.—Austin 2003, no pet.).

12

In a factual sufficiency review, we view the evidence in a neutral light and ask whether the trier of fact was rationally justified in finding guilt beyond a reasonable doubt. *See Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *see also Wooley v. State*, ___ S.W.3d ___, 2008 Tex. Crim. App. LEXIS 762, at *21 (Tex. Crim. App. 2008) (holding that factual sufficiency, like legal sufficiency, should be measured "by the elements of the offense as defined by a hypothetically correct jury charge"). We then determine whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Watson*, 204 S.W.3d at 415. "The verdict may be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Grotti v. State*, ___ S.W.3d ___, 2008 Tex. Crim. App. LEXIS 761, at *13 (Tex. Crim. App. 2008) (citing *Watson*, 204 S.W.3d at 414-17). In other words, we will not reverse a case on a factual sufficiency challenge unless we can say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the verdict. *See Watson*, 204 S.W.3d at 417.

A person commits the offense of aggravated robbery if he commits a robbery and he either (1) causes serious bodily injury to another or (2) uses or exhibits a deadly weapon during the commission of the robbery. *See* Tex. Penal Code Ann. § 29.03. The penal code defines "serious bodily injury" as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46) (West Supp. 2007). The penal code defines "deadly weapon" as:

13

(A)     a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

(B)     anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

*Id.* § 1.07(a)(17) (West Supp. 2007). In its petition alleging delinquent conduct, the State charged that an "unknown blunt object" was used during the commission of the offense. The State concedes that an "unknown blunt object" is not "manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury." Therefore, the State was required to prove, beyond a reasonable doubt, that an "unknown blunt object" was capable of causing death or serious bodily injury "in the manner of its use or intended use."

Whether an object qualifies as a deadly weapon depends upon the evidence presented. *See Thomas v. State*, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991). Indeed, the court of criminal appeals has noted that, depending upon the evidence shown, "almost anything can be a deadly weapon." *Lane v. State*, 151 S.W.3d 188, 191 n.5 (Tex. Crim. App. 2004). Several factors are used in making such a determination, including: (1) the physical proximity between the victim and the object; (2) the threats or words used by the assailant; (3) the size and shape of the weapon; (4) the weapon's ability to inflict death or serious bodily injury; and (5) the manner in which the defendant used the weapon. *In re S.B.*, 117 S.W.3d 443, 446 (Tex. App.—Fort Worth 2003, no pet.). Another factor to consider is the nature of the injuries or wounds inflicted on the victim, if any. *See Lane*, 151 S.W.3d at 191. No one factor is determinative, and an appellate court must examine each case on its own facts to determine whether the fact finder could have concluded from the

14

surrounding circumstances that the object used was a deadly weapon. *Brown v. State*, 716 S.W.2d 939, 947 (Tex. Crim. App. 1986); *In re S.B.*, 117 S.W.3d at 447.

B.P.S. asserts that the juvenile court's deadly weapon finding is based on nothing more than "inferences stacked upon inferences." *See Reedy v. State*, 214 S.W.3d 567, 585 (Tex. App.—Austin 2006, pet. ref'd). We disagree with B.P.S.'s characterization of the evidence in this case. The evidence in the record which supports the juvenile court's finding that an "unknown blunt object" was used in the commission of the offense includes the following:

- Rivera's testimony about the nature of his injuries. He testified that he was hit with something "very hard." It was so hard, in fact, that, when he was hit, he fell to the ground "from the impact." He further testified that "there was a lot of blood," and he drew the court's attention to a scar above his left eye where he had allegedly been hit. The injury was severe enough that police officers called an ambulance to transport Rivera to the emergency room for treatment. Rivera further testified that doctors put a patch over his eye and "did some stitches" because the wound was "very big."

- Police photographs showing Rivera's face after he was hit. The photographs show what appears to be blood around Rivera's left eye and on his forehead.

- Medical records detailing the nature of Rivera's injuries. Statements in the records include: "Patient is a 19-year-old Latin-American male who was in a fight this afternoon and was struck with a rock on his face"; "He has a 1 cm jagged laceration just above his left eyebrow"; "There are two small rock foreign bodies in the wound"; "Facial laceration, sutured"; and "Closed-head trauma."

From the above evidence, the juvenile court could find, beyond a reasonable doubt, that the object used in the commission of the offense was "capable of causing serious bodily injury or death" "in the manner of its use or intended use."

15

There is evidence in the record contrary to the juvenile court's finding. Rivera testified that he did not know what he was hit with, and the object was never recovered. In fact, B.P.S. testified that Rivera was hit, not with a rock, but with a fist.[5] Furthermore, according to B.P.S., the rocks removed from Rivera's wound could have been gravel from Rivera's jacket when he placed the jacket around his head to cover the wound. However, despite this contrary evidence, we cannot say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the juvenile court's deadly weapon finding. B.P.S. admitted at trial that he saw one of the other boys who was with him hit Rivera. Whether Rivera was hit in the face with a rock, a fist, or some other unknown blunt object, the nature and severity of Rivera's injuries—as shown from Rivera's own testimony, the police photographs, and the medical records admitted into evidence—provides sufficient evidence from which the juvenile court could find, beyond a reasonable doubt, that the unknown blunt object was capable of causing serious bodily injury or death.

We overrule B.P.S.'s challenge to the factual sufficiency of the evidence.

---

[5] We note, however, that even a fist can be a deadly weapon, depending on the manner in which it is used. *See Lane v. State*, 151 S.W.3d 188, 191 (Tex. Crim. App. 2004).

## CONCLUSION

We affirm the judgment of the juvenile court.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed:   August 6, 2008