

# NUMBER 13-08-00526-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **RICHARD LOUIS NOLEN, JR.** | |
| **A/K/A RICHARD NOLEN,** | **Appellant,** |
| **v.** | |
| **THE STATE OF TEXAS,** | **Appellee.** |

### On appeal from the County Court
### of Matagorda County, Texas.

# MEMORANDUM OPINION ON REHEARING

**Before Justices Rodriguez, Garza, and Vela**
**Memorandum Opinion on Rehearing by Justice Garza**

After considering the motion for rehearing filed by appellant, Richard Louis Nolen, Jr. a/k/a Richard Nolen, we deny the motion; however, we withdraw our opinion and judgment of August 25, 2009, and substitute the following to make nondispositive clarifications.

## I. INTRODUCTION

Appellant was charged by information with interference with an emergency telephone call, a class A misdemeanor. *See* TEX. PENAL CODE ANN. § 42.062(a), (c) (Vernon Supp. 2008). A jury convicted appellant of the offense and assessed punishment at sixty days' incarceration in a county jail with a $1,000 fine and $345 in court costs. By four issues, appellant argues that: (1) the trial court erred in admitting into evidence hearsay statements made to police by Karen Nolen, appellant's ex-wife; and (2) the evidence supporting his conviction is legally and factually insufficient. We affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On the afternoon of September 5, 2007, Karen Nolen was listening to music and cleaning the house when appellant, her estranged husband at the time, came to the home unannounced and uninvited.[1] Upon arriving at the home, appellant knocked on the door and yelled for Karen to open the door. When she did not answer the door, appellant kicked in the back door to the house. Karen testified that she "took off running" because she believed that appellant was going to assault her.[2] She further testified that she "could see it on [appellant's] face he was steaming mad." Karen recalled that as she was running around the house, she grabbed a telephone and was about to dial the emergency number [911], but appellant grabbed the telephone out of her hands. She ran into a bedroom,

---

[1] Appellant testified that he had previously received a telephone call from Karen, which allegedly caused him to suspect that Karen was contemplating suicide on the day of the incident.

[2] Karen stated at trial that appellant had abused her for thirty years and at the time of the incident and that she and appellant were in the process of getting a divorce. Victor Hadash, a police officer with the Bay City Police Department, noted in his testimony that, shortly after the incident, Karen had told him that: (1) appellant had abused her for the last thirty years; (2) appellant moved out of the house in which Karen was living in July 2007; and (3) the couple was in the process of getting divorced. However, on cross-examination, Karen admitted that she never reported the abuse allegedly perpetrated by appellant to law enforcement. Karen further admitted that appellant had previously been to the house to repair a fence and to fix the hot water heater.

leapt over a bed, and then ran outside to the backyard. While in the backyard, Karen yelled out for neighbors to call the police, but no one responded to her cries. She was unable to use the telephone to call for help, because it remained in appellant's hands throughout the ordeal. Shortly thereafter, appellant left, and Karen used another telephone to call the Bay City Police Department. A few days later, Karen filed for divorce.

Appellant was subsequently charged with interference with an emergency telephone call and, after a jury trial, was convicted of the offense and sentenced to sixty days' confinement in a county jail with a $1,000 fine and $345 in court costs. Appellant filed a motion for new trial and a motion in arrest of judgment; both motions were denied by the trial court after a hearing. This appeal followed.

### III. THE HEARSAY RULE AND THE CONFRONTATION CLAUSE

On appeal, appellant complains about the admission of Officer Victor Hadash's testimony about what Karen told him regarding what had transpired.[3] Appellant argues in his first issue that the trial court erred in concluding that Karen's statements were admissible under the excited utterance exception to the hearsay rule. *See* TEX. R. EVID. 802(2). Appellant further argues in his second issue that Karen's alleged hearsay statements were testimonial in nature and, therefore, their admission violated the Confrontation Clause of the United States Constitution. *See* U.S. CONST. amend VI.

The State counters by arguing that: (1) the trial court properly admitted Officer Hadash's testimony regarding Karen's statements under the excited utterance exception to the hearsay rule because she was still "very upset, nervous, shaking," and "agitated" when Officer Hadash arrived at the house approximately fifteen minutes after appellant had

---

[3] Officer Hadash stated that he conducted the investigation of the incident, which included taking statements from Karen about what had transpired on that afternoon.

left; (2) the admission of the statements did not harm appellant because the same evidence was admitted later in the trial without objection; and (3) there was no violation of the Confrontation Clause because Karen testified at trial and appellant was able to confront her about the statements made to Officer Hadash.

## A. Standard of Review

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2007); *Salazar v. State*, 38 S.W.3d 141, 153-54 (Tex. Crim. App. 2001). A trial court's decision will be upheld unless it lies outside the "zone of reasonable disagreement." *Oprean*, 201 S.W.3d at 726.

## B. Applicable Law

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Hearsay is generally not admissible. TEX. R. EVID. 802. A "matter asserted" includes any matter explicitly asserted, and any matter implied by a statement, if the probative value of the statement offered flows from the declarant's belief as to the matter. TEX. R. EVID. 801(c). When information is offered for a reason other than to prove the truth of the matter asserted, the evidence may be admissible. *Martinez v. State*, 22 S.W.3d 504, 508 (Tex. Crim. App. 2000); *Lopez v. State*, 200 S.W.3d 246, 254 (Tex. App.–Houston [14th Dist.] 2006, pet. ref'd).

An excited utterance is a hearsay exception for a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." TEX. R. EVID. 803(2); *see Salazar*, 38 S.W.3d at 154. In

4

determining whether a statement is an excited utterance, the court may look at the time that elapsed between the event and the statement, as well as whether the statement was in response to a question; however, neither of those two factors is dispositive. *Zuliani v. State*, 97 S.W.3d 589, 596 (Tex. Crim. App. 2003). The critical factor in determining whether a statement is an excited utterance is whether the declarant was still dominated by the emotions, fear, excitement, or pain of the event at the time of the statement. *Id.*

## C. Discussion

At trial, Officer Hadash testified that he arrived at Karen's house approximately fifteen minutes after appellant had left the house. He further testified to the following:

| Q: [The State] | What did you find at the scene? |
|---|---|
| A: [Officer Hadash] | When I arrived on the scene, she escorted me to the backyard because she said that's the way that he entered. She took me to an outer door that was pushed in, shoved in, and then we went through a room to another door that goes into the residence itself, it's like an office, that door was smashed in, the frame was split, splintered and laying on the—parts of it were laying on the floor, the lock was on the floor. |
| Q: | And how did she—what was her—what was her—in what state did you find her, what emotional state? |
| A: | She was very upset and agitated. |
| . . . . | |
| Q: | And just to reiterate, what is—do you believe she was in an excited state? |
| A: | Yes, sir. |
| Q: | And describe that state for us; what did you see? |
| A: | She was very upset, nervous, shaking. |

5

Q: . . . . And again, what did she report to you in that state?

A: She stated that her husband at the time had—

At this time, appellant objected to Officer Hadash's testimony as inadmissible hearsay. The State countered by arguing that Officer Hadash's recounting of what Karen told him was admissible under the excited utterance exception to the hearsay rule because he testified that Karen was very upset and agitated when he first arrived and took her statements. The trial court overruled appellant's objection, and Officer Hadash proceeded to recount Karen's version of what had happened on the day in question and what he discovered in his investigation of the incident.

At the outset of our analysis, we note that a police officer's testimony is not hearsay when it is admitted to establish the course of events and circumstances leading to a defendant's arrest rather than for the truth of the matter asserted. *See Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995); *Ortiz v. State*, 93 S.W.3d 79, 95 (Tex. Crim. App. 2002); *see also Thornton v. State*, 994 S.W.2d 845, 854 (Tex. App.–Fort Worth 1999, pet. ref'd); *Reed v. State*, 794 S.W.2d 806, 809 (Tex. App.–Houston [14th Dist.] 1990, pet. ref'd). Arguably, Officer Hadash's testimony explained how appellant became a suspect in this matter and the status of the investigation; therefore, Officer Hadash's testimony would not be inadmissible hearsay under this analysis.

Moreover, even were we to categorize Officer Hadash's testimony regarding Karen's statements as hearsay, we find that Karen's statements fall under the excited utterance exception to the hearsay rule. *See* TEX. R. EVID. 803(2). Officer Hadash testified that he arrived at the scene approximately fifteen minutes after the incident transpired, and Karen

6

was "very upset, nervous, [and] shaking" while she recounted what had happened. *See Zuliani*, 97 S.W.3d at 596 (holding that statements made twenty hours after an incident by an individual who was "scared to death" and "tired" were excited utterances); *see also Reyes v. State*, 48 S.W.3d 917, 920 (Tex. App.–Fort Worth 2001, no pet.) (concluding that statements made fifteen minutes after an assault by a witness were excited utterances because the witness was "dominated by the emotion, fear, pain, and excitement resulting from appellant's assault, and that her statement was related to the startling occurrence of the assault"); *Bondurant v. State*, 956 S.W.2d 762, 766 (Tex. App.–Fort Worth 1997, pet. ref'd) ("The fact that portions of the statement [excited utterance] were made in response to questions, does not preclude that portion of the statement from being spontaneous and reliable."). Given that Officer Hadash responded to Karen's emergency call within fifteen minutes of the incident and that he observed Karen to be "very upset, nervous, [and] shaking," it is clear that Karen was still dominated by the emotions, fear, and excitement attendant to the incident when she spoke to Officer Hadash. *See* TEX. R. EVID. 803(2); *see also Zuliani*, 97 S.W.3d at 596. We therefore conclude that the trial court did not abuse its discretion in admitting Officer Hadash's testimony regarding Karen's statements under either the excited utterance exception to the hearsay rule or under the course and circumstances leading to appellant's arrest analysis. Accordingly, appellant's first issue is overruled.

In his second issue, appellant asserts that the trial court abused its discretion in allowing Officer Hadash to testify regarding Karen's statements because the statements violated the Confrontation Clause of the United States Constitution. *See* U.S. CONST. amend. VI.

7

The right of confrontation is a constitutional right. *See id.*; *Carroll v. State*, 916 S.W.2d 494, 496 (Tex. Crim. App. 1996). However, it is well settled that even a constitutional right may be waived if not properly preserved. *See Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990); *see also Garcia v. State*, No. 13-05-408-CR, 2007 Tex. App. LEXIS 5080, at *27 (Tex. App.–Corpus Christi June 28, 2007, no pet.) (mem. op., not designated for publication). In order to preserve a complaint for appellate review, Texas Rule of Appellate Procedure 33.1(a)(1) requires that a party make a timely request, objection, or motion that states the grounds for the ruling sought by the party with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds are apparent from the context. TEX. R. APP. P. 33.1(a)(1). An objection is timely when it is made before the evidence is admitted or as soon as the objectionable nature of the evidence becomes apparent. *See Johnson v. State*, 878 S.W.2d 164, 167 (Tex. Crim. App. 1994).

In the instant case, appellant did not object to Officer Hadash's testimony regarding Karen's statements as being a violation of the Confrontation Clause. Instead, appellant objected to Officer Hadash's testimony on hearsay grounds, which the trial court overruled. Appellant later requested a running objection to Officer Hadash's testimony, but the trial court denied his request. Appellant did not make any additional objections to Officer Hadash's testimony. Because appellant failed to argue, in a timely and specific objection, that Officer Hadash's testimony regarding Karen's statements violated the Confrontation Clause, we conclude that appellant waived his second issue.[4] *See* TEX. R. APP. P.

---

[4] Even if appellant had made the proper objection in a timely manner, we note that appellant was afforded the opportunity to cross examine Karen regarding the statements she made to Officer Hadash. *See Crawford v. Washington*, 541 U.S. 36, 61 (2004) ("[A]dmitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation. To be sure, the [Confrontation] Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. *It commands*

8

33.1(a)(1)*; Briggs*, 789 S.W.2d at 924; *Johnson*, 878 S.W.2d at 167; *see also Garcia*, 2007 Tex. App. LEXIS 5080, at *27.

## IV. LEGAL AND FACTUAL SUFFICIENCY

In his third and fourth issues, appellant asserts that the evidence supporting his conviction is legally and factually insufficient.

### A. Standard of Review

In reviewing the legal sufficiency of the evidence, an appellate court examines the evidence in the light most favorable to the State to determine whether any rational finder of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Watson v. State*, 204 S.W.3d 404, 414-17 (Tex. Crim. App. 2006). The trier of fact is the sole judge of the facts, the credibility of the witnesses, and the weight given to testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Jackson*, 443 U.S. at 318-39; *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd). We do not reevaluate the weight and credibility of the evidence, whether circumstantial or direct, nor do we substitute our own judgment for that of the trier of fact. *Mosley v. State*, 141 S.W.3d 816, 821 (Tex. App.–Texarkana 2004, pet. ref'd); *Beckham*, 29 S.W.3d at 151. Instead, we consider whether the jury reached a rational decision. *Beckham*, 29 S.W.3d at 151.

When conducting a factual sufficiency review, an appellate court must determine (1) whether the evidence introduced to support the verdict is "so weak" that the fact finder's verdict seems "clearly wrong and manifestly unjust," or (2) whether, considering conflicting evidence, the fact finder's verdict is nevertheless against the great weight and

_____

*not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross examination.*") (Emphasis added.)

9

preponderance of the evidence. *Watson*, 204 S.W.3d at 414-15. In a factual sufficiency review, we view the evidence in a neutral light. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Barnes v. State*, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994); *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993); *Alexander v. State*, 740 S.W.2d 749, 758 (Tex. Crim. App. 1987)). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor; circumstantial evidence alone can be sufficient to establish guilt. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). On appeal, both circumstantial and direct evidence cases are examined using the same standard of review. *Id.*

We measure the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd). "Such a charge would accurately set out the law, would be authorized by the indictment, and would not unnecessarily increase the State's burden of proof." *Malik*, 953 S.W.2d at 240. A person commits the offense of interference with an emergency telephone call if he "knowingly prevents or interferes with another individual's ability to place an emergency telephone call or to request assistance in an emergency from a law enforcement agency." TEX. PENAL CODE ANN. § 42.062(a). The statutory definition of "emergency" includes

> a condition or circumstance in which any individual is or is reasonably believed by the individual making a telephone call to be in fear of imminent

10

assault[5] or in which property is or is reasonably believed[6] by the individual making the telephone call to be in imminent danger of damage or destruction.

*Id.* § 42.062(d). Moreover,

[a] person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

*Id.* § 6.03(b) (Vernon 2003). A jury may infer knowledge or intent from the acts, conduct, and remarks of the accused and from the surrounding circumstances. *See Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991), *overruled in part on other grounds by Fuller v. State*, 829 S.W.2d 191 (Tex. Crim. App. 1992); *see also Quiroga v. State*, No. 13-08-00661-CR, 2009 Tex. App. LEXIS 6342, at *23 (Tex. App.–Corpus Christi Aug. 13, 2009, no pet.) ("Proof of knowledge or intent is an inference that may be drawn by the fact finder from direct evidence and from evidence surrounding the act.").

## B. Discussion

On appeal, appellant argues that: (1) the evidence demonstrates that he never interrupted an emergency call; (2) Karen never told him that she was going to make an

---

[5] A person commits an assault if the person:

(1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;

(2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or

(3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

TEX. PENAL CODE ANN. § 22.01(a) (Vernon Supp. 2008).

[6] Section 1.07(a)(42) of the penal code provides that a reasonable belief is "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." *Id.* § 1.07(a)(42) (Vernon 2003).

emergency call; and (3) there were other telephones in the house with which Karen could have made the emergency call. Appellant further argues that he did not break into the house with the intention of harming her, but rather to protect her and that Karen urged the filing of charges in this case to bolster her position in the divorce case.[7]

Karen testified that appellant broke into the house, causing damage to the back door and her "boombox." She ran around the house to avoid appellant because he appeared to be enraged. She believed that he was going to assault her again, as he allegedly had done repeatedly during the previous thirty years that they had been together. She grabbed a telephone as she was running away from appellant and attempted to dial 911. However, before she could make the call, appellant grabbed the telephone out of her hands and did not return the telephone until he left the premises several minutes later. When he returned the telephone to her, it was inoperable, so she was forced to use another telephone that was located in another part of the house.[8]

Appellant testified that he had previously received a telephone call at his place of employment from Karen in which all he heard on the telephone was the song, "How Am I Supposed to Live Without You." Appellant stated that he tried to get Karen to talk to him on the telephone, but she refused. Appellant panicked and went to the house where Karen was living, fearful that she was going to commit suicide. Appellant received a second telephone call from Karen on September 5, 2007, which made him once again fear that Karen was going to commit suicide, so appellant again went to the house. Appellant stated

---

[7] Vaughn Dierlam, a police officer with the Bay City Police Department, testified that Karen did not initially wish to press charges against appellant, but that she changed her mind in mid-March 2008.

[8] Officer Hadash stated that the telephone was "in pieces" when he arrived at the house. Karen testified that the telephone was inoperable after appellant had taken it from her and that she placed the inoperable telephone on the cradle and got another telephone to make the call to police.

that once he entered the house, Karen refused to talk to him, and she turned up the volume of the music playing on the "boombox." Appellant became enraged and smashed the "boombox." Appellant did not recall Karen running through the house or picking up a telephone. Appellant denied taking the telephone out of Karen's hands. Appellant testified that after he smashed the "boombox," Karen walked outside, and he subsequently left.

Appellant's arguments pertaining to the sufficiency of the evidence primarily touch on the jury's role as the fact finder. The jury is the sole judge of the weight and credibility of the evidence and is entitled to resolve conflicts in the evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 36.13 (Vernon 2007); *Johnson*, 23 S.W.3d at 7. "Unless the available record clearly reveals a different result is appropriate . . . [we] must defer to the jury's determination concerning what weight to give contradictory testimonial evidence because resolution often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, the jury was entitled to weigh Karen's and appellant's testimony as to what happened on that afternoon, and we must defer to the jury's determination. *See id.*

Based on the evidence adduced at trial, a rational jury could have found that appellant knowingly broke into the house, caused damage to the "boombox," put Karen in fear of an imminent assault, and prevented her from calling the police by grabbing the telephone from her hands. *See* TEX. PENAL CODE ANN. § 42.062(a); *Johnson*, 23 S.W.3d at 8; *Beckham*, 29 S.W.3d at 151; *see also Hernandez*, 819 S.W.3d at 810. Thus, viewing the evidence in the light most favorable to the verdict, we conclude that the evidence supporting appellant's conviction is legally sufficient. *See Jackson*, 443 U.S. at 318-39; *Watson*, 204 S.W.3d at 414-17. Furthermore, viewing the evidence in a neutral light, we

13

cannot say that the jury's verdict is clearly wrong, manifestly unjust, or against the great weight and preponderance of the evidence.  *See Neal v. State*, 256 S.W.3d 264, 275 (Tex. Crim. App. 2008); *Watson*, 204 S.W.3d at 414.  We therefore conclude that the evidence is factually sufficient.  *See Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008). Accordingly, we overrule appellant's third and fourth issues.

## V. CONCLUSION

Having overruled all of appellant's issues, we affirm the judgment of the trial court.

_____

DORI CONTRERAS GARZA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).
Delivered and filed
the 24th day of November, 2009.

14