Opinion issued December 23, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00675-CR

———————————

Darryl Henry Brumfield, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 185th District Court 

Harris County, Texas



Trial Court Case No. 1171038

 



 

MEMORANDUM OPINION

A jury
convicted appellant, Darryl Henry Brumfield, of murder, found a felony
enhancement true, and assessed punishment at 90 years’ confinement.  In seven points of error, appellant contends that
(1) the evidence is legally and factually insufficient; (2) the trial court
erred in admitting evidence that was either irrelevant or in violation of the
prohibition against hearsay; and (3) the trial court erred in overruling
appellant’s objections to the prosecutor’s jury argument.  We affirm.

BACKGROUND

          Milton Roach lived at the
City View Apartments in Houston with his mother, sister, Sandrieka, and younger
brother, Anthony.  Anthony was friends
with appellant.  Sandreika’s boyfriend
was the complainant, James Robinson.

          Milton
testified that on June 14, 2008, he was taking a nap at his apartment.  When he woke up, his family was at the
apartment, along with James, appellant, and two other boys named Alvin and
Sean.  Milton asked James to take him
somewhere, and as the two were getting ready to leave, James exchanged words
with Sean.  Appellant and Sean walked
outside, followed shortly by James and Milton.

          Sean
asked James, “What, you got something against me, bro?  You want to fight me?”  James responded, “Yeah.”  Appellant told the two to go into a nearby
alley and fight, which they did.  Milton
testified that he and his brother Anthony were watching the fight, and
appellant was standing near them.  When
it appeared that James was getting the better of Sean in the fistfight, Milton
and Anthony saw appellant pull a gun and start shooting.  Appellant shot James twice, and James began
to run away.  Appellant ran after James,
shooting him two more times.  When James
collapsed at the end of the alley, appellant stood over him and shot him twice more
in the head.  Appellant then fled.  James died at the scene as a result of the
gunshots.

          Both
before and during the trial, Milton and Anthony identified appellant as the
shooter.  Another witness, Bonnie Ray
King, gave a recorded statement to police in which he said that when he asked
appellant about the murder, appellant said, “Yeah, I had to smash him.”  Appellant laughed about how James screamed
while dying.

          At trial, appellant
presented alibi evidence indicating that he was living in New Orleans with
Jacqueline Smith at the time of the offense.

SUFFICIENCY OF THE EVIDENCE

          In issues one and two,
appellant contends the evidence is legally and factually insufficient.  Specifically, appellant argues that the
contradictory evidence and his alibi evidence “outweigh and contradict the
correctness of the jury’s verdict.”

An appellate court reviews both legal and factual sufficiency
challenges using the same standard of review.  Ervin v. State, No. 01-10-00054-CR, 2010
WL 4619329, at *2–4 (Tex. App.—Houston [1st Dist.] Nov.
10, 2010, pet. filed) (construing majority holding of Brooks v. State, PD-0210-09, 2010 WL 3894613, at *14, *21–22 (Tex. Crim.
App. Oct. 6, 2010)). Under this standard,
evidence is insufficient to support a conviction if, considering all
the record evidence in the light most favorable to the verdict, no rational
fact finder could have found that each essential element of the charged offense
was proven beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 319 (1979); In re Winship, 397 U.S.
358, 361 (1970); Laster v. State, 275
S.W.3d 512, 517 (Tex. Crim. App. 2009); Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App.
2007).  Viewed in the light
most favorable to the verdict, the evidence is insufficient under this standard
in two circumstances:  (1) the record
contains no evidence, or merely a “modicum” of evidence, probative of an element
of the offense; or (2) the evidence conclusively establishes a reasonable
doubt.  See Jackson, 443 U.S. at
314, 318 n.11, 320; Laster, 275 S.W.3d at 518; Williams,
235 S.W.3d at 750.

If an appellate court finds the evidence
insufficient under this standard, it must reverse the judgment and enter an
order of acquittal.  See Tibbs v. Florida, 457
U.S. 31, 41 (1982).  An appellate court determines whether the
necessary inferences are reasonable based upon the combined and cumulative
force of all the evidence when viewed in the light most favorable to the
verdict.  See Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim.
App. 2007).  An appellate court presumes that the fact finder
resolved any conflicting inferences in favor of the verdict and defers to that
resolution.  See Jackson, 443 U.S. at 326; Clayton, 235 S.W.3d at 778. 
An appellate court may not
re-evaluate the weight and credibility of the record evidence.  Williams, 235 S.W.3d at 750.

Appellant argues that the
evidence was insufficient because (1) there was no physical evidence linking
him to the crime, (2) another person at the scene had gun residue on her hands,
but appellant did not, (3) Anthony held the gun and did not tell the 911
operator that appellant was the shooter, (4) Alvin owned the gun, (5) T’Keyah
Hill was unable to verify the date that her MySpace video was made, and (6)
Bonnie Ray King implicated appellant to deflect police attention from himself,
and (7) there was evidence placing appellant in New Orleans at the time of the
crime.

Here, both Milton and
Anthony identified appellant as the same person who shot James multiple times. Challenges
to their credibility are appropriately left to the jury to weigh.  See id.  Physical evidence is not required to
establish guilt. See Guevara v. State, 152 S.W.3d 45, 49 (Tex. Crim.
App. 2004).   Although the jury heard
evidence that appellant was living in New Orleans at the time of the robbery,
it was entitled to believe the eyewitnesses’ testimony and disbelieve
appellant’s alibi evidence.  After
viewing the evidence in the light most favorable to the prosecution, any
rational trier of fact could have found beyond a reasonable doubt that
appellant committed the offense of murder.

We overrule issues one
and two.

ADMISSION OF EVIDENCE

          In points of error three,
eight, and nine, appellant contends the trial court erred by admitting evidence
of (1) a video of a MySpace page, on which appellant is depicted holding a gun,
and (2) pawn shop tickets showing that appellant was in Houston on June 10 and
11, 2008.

A.
 Standard of Review

A trial court’s ruling
on the admissibility
of evidence
is reviewed for an abuse of discretion. See Moses v. State, 105 S.W.3d
622, 627 (Tex. Crim. App. 2003).  An
abuse of discretion occurs when the trial court acts without reference to
guiding rules or principles or acts arbitrarily or unreasonably. Galliford
v. State, 101 S.W.3d 600, 604 (Tex. App.—Houston [1st Dist.] 2003, pet.
ref’d). We will affirm the trial court’s ruling if it lies within the zone of
reasonable disagreement. See Torres v. State, 71 S.W.3d 758, 760 (Tex. Crim.
App. 2002). 

B.  MySpace Video

          At trial, the State called
T’Keyah Hill, who testified that on June 3, 2008—11 days before the shooting—appellant and some other men were at her apartment and they made a video
with a gun, which Hill then posted on her MySpace page.  The State offered a copy of the MySpace video
into evidence.  Appellant objected that
the video was both irrelevant and unduly prejudicial.  The trial court overruled appellant’s
objections, and the video was admitted as State’s Exhibit 43A.  In point of error three, appellant contends
the trial court erred in overruling his objections to the admission of the
MySpace video.

1. Relevancy
under Rules 401 and 404

          Appellant
argues that the MySpace video was irrelevant under Rule of Evidence 401 because
there was no evidence that the gun in the video was the same weapon used in the
offense.  Appellant also argues that the
video violates Rule 404(a) because it had no purpose other than to show
character conformity by depicting him as a “person prone to violence because of
his ‘bad boy’ image with a weapon[.]”  

Evidence that is not relevant is inadmissible. Tex. R. Evid. 402.  Nor is evidence of a person’s character
admissible for the purpose of proving action in conformity therewith.  See
Tex. R. Evid. 404(a). 
Relevant evidence is
“evidence having any tendency to make the existence of any fact that is of
consequence . . . more probable or less probable than it would be without the
evidence.” Tex. R. Evid. 401.  Relevancy is determined by whether a
reasonable person, with some experience in the real world, believes that the
particular piece of evidence is helpful in determining the truth or falsity of
any fact of consequence. Montgomery v. State, 810 S.W.2d 372, 376 (Tex. Crim.
App. 1990) (op. on reh’g). The evidence does not have to prove or disprove a
particular fact; it is sufficient if the evidence provides “a small nudge
toward proving or disproving some fact of consequence.” Stewart v. State,
129 S.W.3d 93, 96 (Tex. Crim. App. 2004).

The indictment alleged, and the State had to prove, that the
complainant was shot with a deadly weapon. 
The video—shot just 11 days before the murder—showed appellant
brandishing a handgun.  While possession
of a handgun sometime before the offense, if considered alone, might not be
relevant, here, Anthony Roach, who witnessed the murder, testified that the gun
in the video was the same gun he saw appellant use to murder James.  Thus, there was testimony tying appellant both
to the gun displayed in the video and the gun used to commit the offense.  As such, the video was relevant under Rule
401, and the trial court did not abuse its discretion in admitting it into
evidence.  See Andrade v. State, 246 S.W.3d 217, 228 (Tex. App.—Houston [14th
Dist.] 2007, pet. ref’d) (holding photograph of defendant with murder weapon
was relevant).  Similarly, because the
video had relevance other than for purposes of showing character conformity,
the trial court did not err in overruling appellant’s Rule 404 objection.

2. Balancing
Test Under Rule 403

Appellant argues that, even if relevant, the video of him
holding the gun was unduly prejudicial and should have been excluded.  Specifically, appellant contends that “[t]he
clear impact of the State’s extraneous evidence was to place appellant in the
worst possible light (“bad boy” look) knowing that the jury would be swayed by
his appearance coupled with his familiarity with a weapon[.]”  

Rule 403 allows for the exclusion of
otherwise relevant evidence when its probative value “is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading the jury, or by considerations of undue delay, or needless
presentation of cumulative evidence.” Tex. R. Evid. 403. Relevant evidence is generally admissible, but it is
properly excluded under Rule 403 when its probative value is substantially outweighed by the
danger of unfair prejudice.
Casey v. State, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007).  The trial court has a considerable amount of freedom in
evaluating the probative value of evidence in relation to its prejudicial
effect. Montgomery, 810 S.W.2d at 378. In close cases, the court should
favor admission in keeping with the presumption of admissibility of relevant
evidence. Hernandez v. State, 817 S.W.2d 744, 746 (Tex. App.—Houston
[1st Dist.] 1991, no pet.).

When undertaking a Rule 403 analysis, a court must balance (1)
the inherent probative force of the proffered item of evidence along with (2)
the proponent’s need for that evidence against (3) any tendency of the evidence
to suggest a decision on an improper basis, (4) any tendency of the evidence to
confuse or distract the jury from the main issues, (5) any tendency of the
evidence to be given undue weight by a jury that has not been equipped to
evaluate the probative force of the evidence, and (6) the likelihood that
presentation of the evidence will consume an inordinate amount of time or
merely repeat evidence already admitted. Gigliobianco v. State, 210
S.W.3d 637, 641–42 (Tex. Crim. App. 2006). 
“Of course, these factors may well blend together in practice.”  Id.
at 642.



(a) Probative
Value 

Here, the trial court could have
reasonably concluded that the disputed evidence was highly probative of the
issue of whether appellant had access to the weapon used in the crime.  The gun belonged to Alvin, but appellant is
shown pointing it at the camera in the video. 
Appellant’s possession of Alvin’s gun on the day the video was shot
makes it more likely that he was also able to obtain possession of Alvin’s gun
on the date of the offense. 
Additionally, Anthony testified that the gun used in the murder was a 9
millimeter automatic with silver on the top, black on the bottom, and two small
red dots on top.  After seeing the MySpace
video, Anthony testified that the gun in the video was the same gun used by
appellant when he shot the complainant. 
Finally, the video was shot 11 days before the murder, on a date that
appellant claimed to have been in New Orleans. Thus, the video is highly
probative on the issue of whether appellant was, in fact, the shooter.

 

 

(b) Unfair Prejudice 

With respect to unfair prejudice, the trial court could have
reasonably concluded that the disputed evidence did not have a tendency to
suggest a decision on an improper basis. 
There was testimony tying the weapon in the video directly to the
charged offense.  While the video depicted
appellant with a gun, it did not show a criminal offense as serious as the
charged offense.  It is unlikely that the
jury would feel compelled to convict appellant of murder simply because he
acted like a “bad boy” and brandished a weapon on camera.  In addition, the trial court limited the
prejudicial nature of the video by requiring that it be admitted as a video
only, without the audio portions.

(c) Confusion
of the Issues or Misleading the Jury

The trial court could have reasonably concluded that the
video did not have a tendency to confuse or distract the jury from the main
issues in the case. The video did not confuse the issues of the trial by
diverting attention from the charged offense. 
To the contrary, the video was directly related to the issues in the
case regarding the deadly weapon used and appellant’s alibi.  “Because the [video] relate[d] directly to
the charged offense, [the] jury could not have been distracted away from the
charged offense regardless of the time required to present [it].”  State
v. Mechler, 153, S.W.3d 435, 441 (Tex. Crim. App. 2005).  Similarly, the trial court could have
reasonably concluded that the jury was equipped to evaluate the probative force
of the video.

(d) Undue
Delay and Needless Presentation of Cumulative Evidence



            Finally, the trial court could have reasonably concluded
that it was unlikely that the presentation of the video would consume an
inordinate amount of time.  The guilt/innocence
phase of the trial lasted two days and consisted of 15 State’s witnesses and
two defense witnesses.  The State
presented the video through the testimony of T’Keyah Hill, who made the video
and then uploaded it to MySpace. Anthony Roach was shown a short clip of the
video, after which he testified that the gun in the video was the same gun he
saw appellant use during the murder. 
Finally, Bonnie Ray King was shown a short clip of the video, and he
then testified that the gun in the video looked like a gun that the State had
introduced for demonstrative purposes.  

While the video may have been cumulative of Hill’s and
Roach’s testimony, it was not needlessly cumulative.  The video provided an opportunity for the
jury to see the gun, which was never recovered, and to determine whether the
gun matched the Roaches’ description of the gun used in the offense.

 

 

 

(e) Conclusion

After balancing the various rule 403 factors, the trial
court could have reasonably concluded that the probative value of the MySpace
video was not substantially outweighed by its prejudicial nature. 

We overrule point of error three.

C. Pawn Shop Tickets

          In its case on rebuttal, the State
called Carmen Contreras, an employee of Cash American Pawn.  Contreras testified that a person came into
the pawn shop where she worked, presented a Mississippi ID bearing the name
“Darryl Brumfield,” and pawned several items. 
The State then introduced two pawn shop tickets—one dated June 10, 2008
and one dated June 11, 2008.  Both were
signed “Darryl Brumfield.” Contreras was not able to identify appellant in
court, but she testified that before accepting an item for pawn, she would
request an ID with a photo and would verify that the “picture on the ID is the
person who’s pawning or selling the items.”  Appellant objected that the tickets were
inadmissible because they were irrelevant and constituted hearsay.  The trial court overruled both objections.  In points of error eight and nine, appellant
contends the trial court erred in overruling his objections to the admission of
the pawn shop tickets.

1.    
Relevancy

Relevant evidence is “evidence having any tendency to make
the existence of any fact that is of consequence . . . more probable or less
probable than it would be without the evidence.” Tex. R. Evid. 401.  Relevancy is determined by whether a
reasonable person, with some experience in the real world, believes that the particular
piece of evidence is helpful in determining the truth or falsity of any fact of
consequence. Montgomery,
810 S.W.2d at 376.

Defense witness Jacquelyn Smith testified that appellant
lived with her in New Orleans from mid-May to June 18, 2008.  However, the pawn shop tickets indicate that
appellant was, in fact, in Houston on two of the days during the period of time
Smith testified that appellant was in New Orleans. Thus, the pawn shop tickets are
relevant because they are helpful in determining the truth or falsity of
Smith’s testimony.  Appellant’s speculation
that someone else might have used appellant’s ID to conduct the pawn
transactions goes to the weight of the evidence, not its admissibility.  Thus, the trial court did not abuse its discretion
in overruling appellant’s relevancy objection.

We overrule point of error eight.

2.    
Hearsay

In point of error nine, appellant also contends the pawn
shop tickets were hearsay.  At trial,
Contreras testified that she was a customer service representative for Cash
America Pawn and that making pawn slips and pawn tickets was a part of her
job.  She further testified that the pawn
slips were kept in the regular course of Cash America’s business, that they
were made at or near the time of the events recorded in the tickets, that they
had not been altered in any way, and that she was a custodian of the records
from Cash American Pawn.  The State then
offered the slips into evidence, and the following exchange took place:

[Defense Counsel]: 
Judge, object.  Not all the
predicate’s been met.

 

[Trial Court]:  Anything else?

[Defense Counsel]: 
Personal knowledge.  Hearsay at
this point and relevance.

          .
. . .

[Trial Court]:  I
though you said they were made in the regular course of business.

 

[Defense Counsel]:  Then
she never said by — specifically by a person with personal knowledge of the
event.  I thought that’s part of the
predicate.

 

          [Trial
Court]:  Okay.

          [Prosecutor]:  I can certainly clear that up.

[Prosecutor]:  And
were these tickets and receipts made by someone with personal knowledge of the
events in them.

 

          [Contreras]:  Yes.

[Prosecutor]: 
Okay.  Judge, at this time I’m
going to reoffer State’s exhibits 81 and 82 into evidence, tender to opposing
counsel.

 

[Defense Counsel]: 
Thank you, Judge. Just object to relevance and hearsay.

          

[Trial Court]:  Overruled. 81 and 82 are admitted.

 

          The State argues that the pawn shop
tickets were admissible under the business records exception to the hearsay
rule.  We agree.  Texas Rule of Evidence 803(6) allows documents kept in the
course of regularly conducted business to be admitted into evidence as an
exception to the hearsay rule. Tex. R. Evid. 803(6);
Reyes v. State, 48 S.W.3d 917, 921 (Tex. App.—Fort Worth 2001, no pet.).
Rule 803(6)
requires the proponent of the evidence to prove that the document was made at
or near the time of the events recorded, and the document must be made from
information collected by a person, who had knowledge of the events.  Id. The document must also be made or
kept in the course of regularly conducted business. Id.  “Rule 803(6) does not require that the person authenticating the record
be either the creator of the record or to have personal knowledge of the
information recorded therein.” Canseco v. State, 199 S.W.3d 437, 440
(Tex. App.—Houston [1st Dist.] 2006, pet. ref’d). Rather, the testifying
witness need only have knowledge of how the record was prepared. Id.

            Contreras’s testimony meets these requirements.  First, she testified about how the documents
were prepared.  The pawn tickets were
prepared after requesting photographic ID from the person and verifying that
the person pawning the item was the person on the ID.  The pawn tickets were then filled out with
all of the requisite information, including the items being sold or
pawned.  The customer was then requested
to sign the ticket.  Next, Contreras
testified that the pawn tickets were kept in the regular course of business and
were prepared at or near the time of the events recorded therein.  Contreras also testified that the tickets had
not been altered in any way since they were created. Finally, Contreras
testified that the pawn tickets were created by someone with personal knowledge
of the events recorded therein.  In fact,
Contreras created one of the receipts herself, and another employee of Cash
America Pawn created the second receipt.

Because the State proved that the business-records exception
to the hearsay rule applied to the pawn tickets, the trial court did not abuse
its discretion in overruling appellant’s hearsay objection.

We overrule point of error nine.

JURY ARGUMENT

          In
points of error four, five, and six, appellant contends the trial court erred
by overruling his objections to the prosecutor’s closing arguments.

A.  Standard of Review

Proper jury argument is limited to (1) summation
of the evidence presented at trial, (2) reasonable deductions drawn from that
evidence, (3) answers to opposing counsel’s argument, and (4) pleas for law
enforcement. Jackson v. State, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000);
Swarb v. State, 125 S.W.3d 672, 685 (Tex. App.—Houston [1st Dist.] 2003,
pet. dism’d). To determine whether a party’s argument properly falls within one
of these categories, we must consider the argument in light of the entire
record.  Swarb, 125 S.W.3d at 685.

Even when an argument exceeds the permissible bounds of
these approved areas, such will not constitute reversible error unless, in
light of the record as a whole, the argument is extreme or manifestly improper,
violative of a mandatory statute, or injects new facts harmful to the accused
into the proceeding.  Wesbrook v. State, 29 S.W.3d 103, 115
(Tex. Crim. App. 2000).  The remarks must
have been a willful and calculated effort on the part of the State to deprive
the appellant of a fair and impartial trial. 
Id.

B. 
Argument Regarding Shifting the Burden of Proof

In point of error four, appellant contends the trial court
erred in overruling his objection to the prosecutor’s jury argument at the
close of the guilt/innocence phase of trial, which he alleges improperly
shifted the burden of proof from the State to appellant.  During closing argument, the following
exchange took place:

[Prosecutor]:  So, what is it that we know?  You obviously heard from those witnesses, the
defense witnesses who testified about that alibi.  What are some of the other things that she
mentioned?

Well,
she mentioned that, well, you know, gosh, one of her points was, well, the
officer didn’t separate the witnesses, Anthony Roach and Patricia Roney,
whenever they—whenever he was at the scene. 
They weren’t separated before they ran up to them.  Well, I mean, what opportunity, first of all,
would the officer have had to separate them? 
That’s just the way life is.  They
ran up to him, they said, Hey, this is what we think happened and this is what
we know and immediately at that point, he separates them,

But
more importantly than that, what reason has been given, what reason has been
shown at all for why any of these—why the Roaches would lie?  Why they’d make any of this up?

There
hasn’t been a single motivation—a single reason that’s been shown for why

[Defense Counsel]: 
Judge, that’s shifting the burden. 
We don’t have to show anything.

 

[Trial Court]: It’s overruled.

 

Appellant contends that the argument was an impermissible
comment “point[ing] to the absence of evidence that could be supplied only by
the appellant’s testimony.”  As such,
appellant argues that the prosecutor’s remark was a comment on appellant’s
failure to testify.

A comment on an accused’s failure to testify violates the
accused’s state and federal constitutional privileges against
self-incrimination. Moore v. State, 849 822 S.W.2d 355, 358 (Tex.
App.—Houston [1st Dist.] 1992, pet. ref’d).  In addition, the code of criminal procedure
provides that a defendant’s failure to testify on his own behalf may not be
held against him and that counsel may not allude to the defendant’s failure to
testify. Tex. Code Crim. Proc. Ann.
art. 38.08.

To determine whether a comment violates
a defendant’s right against self-incrimination or article 38.08, we must decide
whether the language used was manifestly intended or was of such a character
that the jury naturally and necessarily would have considered it to be a comment
on the defendant’s failure to testify. See Bustamante v. State, 48
S.W.3d 761, 765 (Tex. Crim. App. 2001); Fuentes v. State, 991 S.W.2d
267, 275 (Tex. Crim. App. 1999). The offending language must be viewed from the
jury’s standpoint, and the implication that the comment referred to the
accused’s failure to testify must be clear. Bustamante, 48 S.W.3d at
765; Swallow v. State, 829 S.W.2d 223, 225 (Tex. Crim. App. 1992). A
mere indirect or implied allusion to the defendant’s failure to testify does
not violate the accused’s right to remain silent. Wead v. State, 129
S.W.3d 126, 130 (Tex. Crim. App. 2004); Patrick v. State, 906 S.W.2d
481, 490–91 (Tex. Crim. App. 1995). A statement
referencing evidence that can come only from the defendant is, however, a
direct comment on the defendant’s failure to testify. Goff v. State, 931
S.W.2d 537, 548 (Tex. Crim. App. 1996); Madden v. State, 799 S.W.2d 683,
700 (Tex. Crim. App. 1990).  Indeed, the
prosecutor may even comment on
the defendant’s failure
to produce witnesses and evidence so long as the remark does not fault the
defendant for exercising his right not to testify. Jackson, 17 S.W.3d at 674.

In the present case, the State’s argument was not an
improper comment because it did not require appellant’s testimony to personally
rebut the State’s argument. The State’s argument merely pointed out that the
motives of its witnesses, the Roaches, had not been impeached.  Evidence showing a motive to lie by the
Roaches would not necessarily have to be supplied through appellant’s own
testimony. See
Harris v. State,
122 S.W.3d 871, 884 (Tex. App.—Fort Worth 2003, pet. ref’d) (holding State’s
argument regarding lack of evidence showing motive for State’s witnesses to lie
not improper comment on defendant’s failure to testify).

Accordingly, the trial court did not err in overruling
appellant’s objection.  We overrule point
of error four.

C.  
Argument Regarding Community Demands

          In point of error five, appellant
contends the trial court erred in failing to grant appellant’s motion for
mistrial, which was based on the prosecutor’s argument regarding the “community
demands” for an appropriate punishment. 
During closing argument at punishment, the following exchange took
place:

[Prosecutor]  Now,
folks, I don’t usually ask for a number, specific number, and I’m not going to
ask you for a number today.  I’m going to
ask you for a word.  I’m going to ask it
for Sabrina Robinson.  I’m going to ask
it for Corey and Sandrieka.  I’m going to
demand it for little James that never even got to meet his father.  His community demands that you take that man —

 

[Defense Counsel]: 
Judge, I object.  That’s improper
argument, “community demands.”

 

[Trial Court]: Sustained as to “demand.”

 

[Defense Counsel]: Ask the jury be instructed to disregard.

 

[Trial Court]:  Jury
will disregard.

 

[Defense Counsel]: 
Move for mistrial.

 

[Trial Court]: 
Denied.

 

          The
prosecutor went on to ask that the jury assess a life sentence.  When the State asks a jury to assess a
particular punishment “because their neighbors desire it,” it violates a
defendant’s fundamental right to confront the witnesses against him and be
punished based only on testimony that has been subject to cross-examination and
rebuttal and evidence that has been presented at trial. Cortez v. State,
683 S.W.2d 419, 420 (Tex. Crim. App. 1984) (holding that argument that only
life imprisonment “would be any satisfaction at all to the people of this
county” was improper plea for jury to heed expectations of community); Porter
v. State, 226 S.W.2d 435, 436 (1950) (holding that argument that community
expected jury to assess death penalty was improper). Argument that beseeches a
jury to assess “a particular punishment because ‘the people’ desire such is
improper jury argument.” Cortez, 683 S.W.2d at 420. Such an argument has
the effect of asking a jury to punish a defendant upon the outside influence of
“public sentiment or desire rather than upon the evidence that the jury had
received.” Id. at 421.

          Because the prosecutor argued that the
“community demands” a particular punishment, the trial court properly sustained
appellant’s objection.  However, the State’s
brief and interrupted reference to the “community demands,” even if improper,
does not rise to the level of extreme or manifestly improper argument or inject
the type of harmful facts necessary for us to conclude the trial court erred in
not granting a mistrial. By instructing the jury to disregard the State’s
challenged remarks, the trial court cured the alleged impropriety. See
Wesbrook, 29 S.W.3d at 115. 

          We overrule point of error five.

D. 
Argument Regarding Jury’s Job to Return Life Sentence

          In point of error six, appellant
contends the trial court erred in failing to grant appellant’s motion for
mistrial, which was based on the prosecutor’s argument that it was the jury’s
job to sentence appellant to life in prison. 
Specifically, appellant contends that the argument conflicted with the
charge of the court, in which the jurors were instructed to reach a unanimous
vote by way of “a full, fair, and free exercise” of their individual opinions.  During closing argument at punishment, the
following exchange took place:

[Prosecutor]:  We have
to protect this community from that man. 
In four years after coming over here from Hurricane Katrina, he has
robbed and been there at least when one person was shot in the stomach.  Robbed another person, went to jail for two
years.  And in less than six months after
he’s out from that, he executes James Robinson. 
What do you think he’s going to do the second you let him out?

 

You can’t do it.  It is
all 12 of your jobs to go back there right now with a sentencing to life in
prison.

 

[Defense Counsel]: 
Objection, Judge.  It’s not their
job.  It’s their job to decide on a
verdict.

 

[Trial Court]: Sustained.

 

[Defense Counsel]: Ask the jury be instructed to disregard.

 

[Trial Court]:  Jury
will disregard.

 

[Defense Counsel]: 
Move for mistrial.

 

Trial Court]: Denied.

 

Appellant argues that it was the jury’s duty to reach a
verdict, not to assesses punishment at life in prison.  The State’s argument here was made at the
punishment stage of the trial, during which it is the jury’s duty to assess the
specific facts and circumstances and to determine the appropriate
punishment.  See Sadler v. State, 977 S.W.2d 140, 142 (Tex. Crim. App. 1998). Thus,
it was the jury’s job to assess punishment, and the argument does not conflict
with the court’s charge.  The State’s
suggestion that life imprisonment was the appropriate punishment was both a
response to defense counsel’s argument that a 15–20
year sentence would be appropriate and a plea for law enforcement.

          Furthermore, the argument, even if
impermissible, was not extreme or manifestly improper argument, nor did it inject
the type of harmful facts necessary for us to conclude the trial court erred in
not granting a mistrial. By instructing the jury to disregard the State’s
challenged remarks, the trial court cured the alleged impropriety. See
Wesbrook, 29 S.W.3d at 115. 

          We overrule point of error six.

E. 
Prosecutor’s Argument Misstating Facts

In point of error seven, appellant contends the trial court
erred in failing to grant appellant’s motion for mistrial, which was based on
the prosecutor’s argument misstating the facts adduced at trial.

At trial, Adrienne Cancienne testified about an extraneous
offense.  Specifically, she testified
that she saw appellant and another man sneak up on a boy and hit him over the
head with a gun.  As the boy lay on the
ground, the two went through the boy’s pockets, shot him in the stomach, and
then fled.  Cancienne was certain that
appellant was one of the two assailants, but she could not tell if he was the
shooter.  Cancienne also testified that
appellant later called her from jail and said “he heard [she] said something
about him shooting the guy[.]”  Cancienne
testified that appellant was “talking crazy” and she gave the phone to her
cousin.  Cancienne’s cousin told her that
appellant said Cancienne snitched and he was going to kill her when he got out
of jail.

During closing argument at punishment, the prosecutor
discussed the extraneous offense in the following exchange:

[Prosecutor]: 
[Appellant] executed James Robinson over nothing.  Over absolutely nothing, except he wanted to
get another teardrop on his face.

 

And I started thinking more about what that man is.  Some who absolutely, at the age of 15 years
old, could sneak up behind someone with a bandanna on their face, take another
gun and smack them on the back of the head. 
And then when that person didn’t want to comply, didn’t want him going
through his pockets to take his things, he shot him in the stomach.

 

[Defense Counsel]: Objection.  That’s a misstatement of 

the evidence.  The
witness didn’t know who shot the gun.

 

[Trial Court]: Sustained.

 

[Defense Counsel]: Ask that the jury be instructed to
disregard.

 

[Trial Court]: Jury will disregard the last statement.

 

[Defense Counsel]: Move for mistrial.

 

[Trial Court]: Denied.

 

Appellant argues that the prosecutor’s remark was a
misstatement of the evidence because Cancienne specifically testified that she
could not see whether appellant was the shooter.  The State responds that the prosecutor’s
statement was a reasonable deduction from the evidence.  We agree with the State.

It is true that Cancienne did not see the shooter, but she
clearly identified appellant as one of the two men who attacked the boy.  And, in appellant’s jail house call, he
threatened Cancienne because he heard “he heard [she] said something about him
shooting the guy[.]”  In light of
appellant’s presence at the scene of the shooting and his threats to kill
Cancienne because she “snitched,” the prosecutor’s argument was a reasonable
deduction from the evidence.

Further, even if improper, the argument does not rise to the
level of extreme or manifestly improper argument or inject the type of harmful
facts necessary for us to conclude the trial court erred in not granting a
mistrial.  By instructing the jury to
disregard the State’s challenged remarks, the trial court cured the alleged
impropriety. See Wesbrook, 29 S.W.3d at 115. 

          We overrule appellant’s seventh point
of error.

CONCLUSION

          We affirm the judgment of the trial
court.

 

 

 

                                                                   Sherry
Radack

                                                                   Chief
Justice 

 

Panel
consists of Chief Justice Radack and Justices Alcala and Massengale.

Do
not publish.   Tex. R. App. P. 47.2(b).